**RHODE ISLAND HOSPITAL**

v.

**Joseph A. CALIFANO, Jr., in his capacity as Secretary of Health, Education and Welfare and James B. Cardwell, in his capacity as Commissioner of the Social Security Administration.**

Civ. A. No. 77–0308.

United States District Court,
D. Rhode Island.

Feb. 24, 1978.

Thomas D. Gidley and Thomas R. Courage, Providence, R. I., for plaintiff.

Lawrence E. Burstein, Asst. Regional Atty., U. S. Dept. of Health, Education and Welfare, Boston, Mass., and Everett C. Sammartino, Asst. U. S. Atty., Providence, R. I., for defendants.

## OPINION

FRANCIS J. BOYLE, District Judge.

This is an action by Plaintiff Rhode Island Hospital, a non-profit Rhode Island corporation, as "provider" of services under the Medicare (Title XVIII) provisions of the Social Security Act, 42 U.S.C. § 1395 et seq.[1] against Defendant Joseph A. Califano,

---

1. The Medicare program undertakes cost of reimbursement to those who provide certain services to persons eligible under the program. The amount of reimbursement is based either on the provider's customary rates for the services rendered, or on the "reasonable costs" of those services, whichever is less. In 1972, when Congress amended the Medicare Statute by Pub.L.No.92–603, § 223, it defined "reasonable costs" as the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of

Jr., in his capacity as Secretary of the Department of Health, Education and Welfare, and Defendant James B. Cardwell, in his capacity as Commissioner of the Social Security Administration. A hearing on the merits without a jury was consolidated with a hearing on the Government's Motion to Dismiss.

Plaintiff Hospital prays for a declaratory judgment, seeking to have certain regulations promulgated by the Secretary to be declared unconstitutional and without statutory authority. Plaintiff further seeks "injunctive and other further necessary or proper relief in aid of its rights."

The Court finds the facts to be as follows:

Plaintiff is the largest public hospital located in the State of Rhode Island. It provides "tertiary care", that is, in addition to care and treatment of patients one would expect in an emergency room and a community hospital, it provides specialized care and treatment, often as a result of referrals from community hospitals which are not equipped to render such care. Plaintiff is a unique institution in the State of Rhode Island, and the Court judicially notices it to have achieved a state-wide reputation for excellence in the treatment of illnesses and diseases for which there is no other capable institution in the State. In addition, the Plaintiff hospital is substantially involved in collaboration with Brown University Medical School and provides the situs and facilities for a major portion of the clinical program of the Medical School, and is, in fact, a teaching hospital. This collaboration is of benefit to the University, the Hospital, and the public.

From 1970, through September, 1977, except in 1973–4, Rhode Island Hospital participated in negotiated agreements with its fiscal intermediary, Blue Cross of Rhode Island, the State of Rhode Island through the State Budget Office, and the Social Security Administration. This latter agency ultimately determined Plaintiff Hospital's charges on the basis of which Plaintiff was reimbursed for Medicare patients. The agreements, called Prospective Rating Agreements, were permitted under a waiver granted in accord with 42 U.S.C. § 1395b–1(b), Pub.L.No.92–603, § 222. The waiver expired on September 30, 1977, and has not been renewed.

The waiver was required because the usual method of payment under the Medicare Act is reimbursement. Under the Prospective Rating Agreements, the Plaintiff Hospital could ascertain in advance of or at least contemporaneously with the commencement of its fiscal year, the amount which it would be paid for Medicare patients. Plaintiff's budgeted cost of inpatient general routine care [2] is $130.47 per diem for its fiscal year beginning October 1, 1977, while the interim payment provisions of 42 U.S.C. § 1395x(v)(1)(A) as applied by Defendant in accord with regulations, will permit reimbursement at the rate of only $112.83 per diem. There is a difference of $17.64 per diem per patient, which would according to Plaintiff's predictions, over the course of twelve months, amount to a total difference between costs and reimbursement of $1,559,094.

In general, the regulations [3] classify all member hospitals according to the per capita income of the geographic area in which the hospital is located and the number of beds available in the hospital. Specifically the geographic area in which the hospital is located is determined by its locus within a Standard Metropolitan Statistical Area (S.M.S.A.), as established by the Office of Management and Budget of the Department of Commerce. Plaintiff Hospital has

needed health services. 42 U.S.C. § 1395x(v)(1)(A).

**2.** Routine services mean regular room, dietary and nursing services, minor medical and surgical supplies and the use of equipment and facilities for which a separate charge is not customarily made. 20 C.F.R. § 405.452(d)(2) (1977).

**3.** The initial classification system developed by the Secretary is described at 39 Fed.Reg. 20168 (1974). Later refinements may be found at 40 Fed.Reg. 23622 (1975), 41 Fed.Reg. 26992 (1976), and 42 Fed.Reg. 40948 (1977).

been determined to be within the Providence-Warwick-Pawtucket S.M.S.A.

The respective S.M.S.A.'s are then assigned to one of five groups, based on the per capita income of the particular S.M.S.A.[4] In accordance with the data utilized by the Office of Management and Budget, the Providence-Warwick-Pawtucket S.M.S.A. has been assigned to Group III. Each group is further divided into units called cells. A member hospital within a particular S.M.S.A. (and Group) will then be assigned to a particular "cell" based on the number of beds available. Rhode Island Hospital, with its 719 beds, has been assigned to Classification Cell Number 13. This cell arrays all hospitals in Group III having a bed-size capacity of 405 beds or more.

The limits for each cell were developed as follows:

1. Inpatient general routine service cost data for each participating hospital were obtained from the fiscal intermediaries, in Plaintiff's case from Blue Cross of Rhode Island.

2. The data for each cell were arrayed in descending order of the cost.

3. The 80th percentile and median were computed.

4. An amount equal to 10% of the median was added to the 80th percentile amount.

5. This sum was adjusted to reflect the 14% annual rate of estimated costs increases in per diem routine service costs following the date of the data collection.

6. This amount was then rounded up to the nearest whole dollar. A further minor adjustment was made for hospitals reporting on other than a reporting period beginning July 1, 1977.

The final figure establishes an upper limit, beyond which claimed routine expenditures are held to be presumptively unreasonable. A participant may rebut this presumption in an application for an exception.[5] Plaintiff has not made any such application, nor has Plaintiff submitted this controversy to the Secretary of the Department of Health, Education and Welfare for his determination in any other fashion. Plaintiff contends that it would be futile to do so.

Plaintiff seeks to have declared unconstitutional those regulations promulgated pursuant to § 223 of Pub.L.No.92–603, namely 20 C.F.R. § 405.460, subsections (a) through (d), and the "Schedule of Limits" established[6] thereunder. These regulations purport to establish the method for determining the reasonableness of costs for general routine inpatient services rendered by "provider" organizations.[7]

The general rule is that Medicare will cover all reasonable costs of individuals covered under the Act, and no costs of individuals not so covered.[8] A "provider", such as Plaintiff Hospital, will ordinarily render services to both classes of individuals. Consequently, the provider must determine the correct proportion of charges to allocate for Medicare beneficiary services and for non-Medicare services. Realistically, this computation can be done only at the end of some fiscal period; in the case of Rhode

---

**4.** The higher the per capita income of the S.M.S.A., the lower in number will be the Group to which that S.M.S.A. is assigned—e. g. the S.M.S.A. with the highest per capita income will be assigned to Group I.

**5.** 20 C.F.R. 405.460(e), (f) (1977).

**6.** The Schedule of Limits on Hospital Inpatient General Routine Service Costs, published at 41 Federal Register 26992, June 30, 1976, were in effect at the time of the commencement of this action. The "Proposed Schedule of Limits Under the Health Insurance Program for Cost-Reporting Periods Beginning On or After October

1, 1977," published at 42 Federal Register 40948, August 12, 1977, sets out a revised Schedule of Limits. This tentative schedule was promulgated on October 3, 1977 at 42 Federal Register 53675.

**7.** Congress expressly authorized the Secretary of Health, Education and Welfare to promulgate regulations for determining whether costs were unnecessary, and therefore unreasonable. 42 U.S.C. § 1395x(v)(1)(A).

**8.** 20 C.F.R. §§ 405.452(a)(1) and (b)(1) (1977).

Island Hospital, at the end of its fiscal year.[9]

Lump sum annual payments, however, which are made substantially after services have been rendered by a "provider" would not be a viable method of reimbursement, in light of a hospital's need for liquid assets to meet its daily costs. Consequently, Congress has authorized interim *estimated* payments to be made, no less often than at monthly intervals, with subsequent "suitable retroactive corrective adjustments". The statute *requires* such adjustments where "the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive."[10]

Section 1395oo(a) provides a method for a provider, dissatisfied with a final determination by its fiscal intermediary as to the amount of total program reimbursement due, to obtain a hearing before the Provider Reimbursement Review Board (PRRB). This Board's final decision may be reviewed, in turn, by the Secretary on his own motion within sixty days of the provider's being notified of the Board's decision.

The provider may later secure judicial review of the Secretary's determination, or the PRRB's final decision should the Secretary decide not to review, by commencing a civil suit in the appropriate district court of the United States within sixty days of such decision by the PRRB or determination by the Secretary.[11]

Plaintiff Hospital alleges federal district court jurisdiction under 28 U.S.C. § 1331(a) in that "this action arises under the Constitution and the laws of the United States and is brought against officers or employees of the United States in their official capacities."

The Government contends, in response to the Hospital's jurisdictional allegation, that the District Court is precluded from taking jurisdiction of this action. It, therefore, has moved to dismiss Plaintiff's Complaint on the ground that this Court lacks subject-matter jurisdiction at this time. The Government's Motion to Dismiss is hereby granted.

The Government relies primarily on the statutory provisions of the Social Security Act, 42 U.S.C. §§ 405(h) and 1395ii (to the extent that § 1395ii incorporates § 405(h) with respect to actions under the Medicare provisions of the Social Security Act.) Section 405(h), subheaded "Finality of Secretary's Decision", reads as follows:

> The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 of Title 28 to recover on any claim arising under this subchapter.

The Government places great emphasis on the third sentence of that section, *viz*, "No action against the United States, the Secretary or any officer or employee thereof shall be brought under section 41 of Title 28[12] to recover on any claim arising under this subchapter." The subchapter referred to in the preceding sentence is Title II of the Social Security Act (entitled Federal Old-Age, Survivors and Disability Insurance Benefits). Although the present action is not brought to enforce a claim "arising under this Subchapter," but instead is being brought to challenge provisions of Title XVIII (entitled Health Insurance for Aged and Disabled—short name, Medicare), § 405(h) is expressly made applicable to

---

9. The first year for which these regulations will be applicable to Plaintiff is October 1, 1977 to September 30, 1978.

10. 42 U.S.C. § 1395x(v)(1)(A)(ii).

11. 42 U.S.C. § 1395oo(f), (1), as amended, Act of Oct. 26, 1974, Pub.L.No.93–484, § 3(a), (b), 88 Stat. 1459.

12. The original Section 41 of Title 28 has been replaced by various Title 28 sections delimiting district court jurisdiction, including § 1331(a).

Title XVIII actions by its incorporation through § 1395ii.

On its face, § 405(h) seems to preclude federal court jurisdiction over an action in which a Plaintiff has failed to pursue the administrative remedies available under the Act. Here, Plaintiff Hospital has failed to seek any administrative hearing to which it is entitled, as for example under § 1395*oo* (a).

The Government's contentions derive support from the case law. In *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the Supreme Court addressed the question of whether a federal district court may take cognizance of a claim challenging, on equal protection grounds, the constitutionality of regulations promulgated by the Secretary of the Department of Health, Education and Welfare. The court held that the District Court did not have federal-question jurisdiction under 28 U.S.C. § 1331(a) to adjudicate that claim. It determined that though that claim arose under the Constitution, it also arose under the Social Security Act, which "provides both the standing and the substantive basis . . . of their constitutional contentions." [13] Consequently, it held that the language of § 405(h):

> extends to any "action" seeking "to recover on any [Social Security] claim"—irrespective of whether resort to judicial processes is necessitated by discretionary decisions of the Secretary or by his non-discretionary application of allegedly unconstitutional statutory restrictions. [14]

The court continued:

> Thus the plain words of . . . § 405(h) do not preclude Constitutional challenges. They simply require that they be brought under jurisdictional

13. 422 U.S. at 761, 95 S.Ct. at 2464.

14. *Id.* at 762, 95 S.Ct. at 2465.

15. *Id.*

16. *Id.*

17. In *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), the court held that Section 10 of the Administrative Procedure

grants contained in the Act, and thus in conformity with the same standards which are applicable to nonconstitutional claims arising under the Act. [15]

The court found this requirement not only to be constitutionally valid, but also viable and "manifestly reasonable". The requirement would afford the Secretary the requisite flexibility in administering a complex statutory program and would assure him "the opportunity prior to constitutional litigation to ascertain, for example, that the particular claims involved are neither invalid for other reasons nor allowable under the provisions of the Social Security Act." [16]

*Milo Community Hospital v. Weinberger*, 525 F.2d 144 (1st Cir. 1975), involved an action by Plaintiff to enjoin the Secretary of the Department of Health, Education and Welfare from terminating its federally assisted status as a "provider of services" as defined under 42 U.S.C. § 1395x(u). Plaintiff had alleged jurisdiction for its claim variously under 42 U.S.C. § 4332(2)(C), 5 U.S.C. §§ 702 and 706 [17] and 28 U.S.C. §§ 1331, 1343 and 1361. The court, relying on the fact that in *Salfi* "[t]he Supreme Court has spoken most relevantly to the jurisdictional issues in the present case," determined that the lower court had been "clearly correct in its holding that [Plaintiff] could not claim judicial review of its due process and equal protection claims." [18]

The court reiterated *Salfi's* characterizations of § 405(h), *viz*, "central to requisite grant of subject-matter jurisdiction," "a statutorily specified jurisdictional prerequisite," and "something more than simply a codification of the judicially developed doctrine of exhaustion." The court then concluded that the administrative requirements

Act, which provides generally for judicial review of actions of federal administrative agencies by persons aggrieved by such action, does *not afford an implied grant to district courts of subject-matter jurisdiction to review such agency action.*

18. 525 F.2d at 147.

were "not made inapplicable by reason of a constitutional challenge, beyond the power of the Secretary to take remedial action." [19]

Plaintiff Hospital asserts, on the other hand, that the case law unequivocally supports the position that Section 405(h) has no application to provider reimbursement controversies. Plaintiff cites *University Hospital, Inc. v. Weinberger*, No. 75–3511–G (D.Mass., April 16, 1976) (order denying motion to dismiss), as authority for this proposition, by pointing out that the court entered an Order, "holding *Salfi* to be inapplicable to the question of jurisdiction." However, that Order was more narrowly drawn than standing for the general proposition that *Salfi* is inapplicable to the question of jurisdiction. The court found *Salfi* inapplicable for a particular reason, namely:

> that Section 1878 of the Social Security Act, 42 U.S.C. § 1395oo contains no provision for judicial review of a decision on a provider of services claim by the Provider Reimbursement Review Board unless that decision is reversed or modified adversely to the provider by the Secretary of Health, Education and Welfare.

*Sub silentio*, the court was saying that if there were a device providing for judicial review of the Board's decision in any event, *Salfi* would be applicable. Section 1395oo (f)(1) now [20] provides for such review:

> A decision of the Board shall be final unless the Secretary, on his own motion, and within 60 days after the provider of services is notified of the Board's decision, reverses, affirms or modifies the Board's decision. Providers shall have the right to obtain judicial review of any final decision of the Board, or of any

reversal, affirmance, or modification by the Secretary.

Plaintiff also relies on *Association of American Medical Colleges v. Weinberger*, No. 75–0888 (D.D.C. June 30, 1975) (unreported). In that action, also involving a challenge of the regulations and schedules promulgated pursuant to § 223 of Pub.L. No.92–603, the court summarily denied the Government's motion for reconsideration of its previous motion to dismiss for lack of jurisdiction. The court held that the decision in *Salfi* was inapplicable to the jurisdictional question but sustained the regulation and schedules as reasonable and consistent with valid Congressional objectives.

Plaintiffs appealed the lower court's decision on the merits. On appeal, the United States Court of Appeals for the District of Columbia found "that appellant's failure to pursue the Act's remedial administrative procedures that culminate in judicial review left the District Court without subject-matter jurisdiction over the action." [21] *Association of American Medical Colleges v. Califano*, 186 U.S.App.D.C. 270, 569 F.2d 101, No. 75–1888 (D.C.Cir.1977).

The court relied heavily on *Salfi* in overturning the lower court's decision. It said that:

> under *Salfi* . . . jurisdiction pursuant to Section 1331(a) is negated by Section [4]05(h) with respect to any action envisioning recovery on any claim emanating from Title II of the Social Security Act. To precisely "the same extent," the "sweeping and direct" language of Section [4]05(h) precludes Section 1331(a) jurisdiction of suits seeking eventual realization of provider-cost reimbursement

---

**19.** *Id.*

**20.** Prior to October, 1974, judicial review under § 1395oo was limited strictly to decision by the Secretary reversing or adversely modifying a determination by the Board. The 1974 amendment of § 1395oo, effective for accounting periods ending on or after June 30, 1973, authorizes review of final decisions of the Board, and of *any* reversal, affirmance or modification of any Board decision by the Secretary. Act of

Oct. 26, 1974 Pub.L.No.93–484, § 3(a), (b), 88 Stat. 1459.

**21.** The District Court had assumed subject-matter jurisdiction pursuant to Section 10 of the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (1970), *as amended*, Act of Oct. 21, 1976, Pub.L.No.94–574, § 1, 90 Stat. 2721 and 28 U.S.C. § 1331(a), *as amended*, Act of Oct. 21, 1976, Pub.L.No.94–574, § 2, 90 Stat. 2721. See Note 17, *supra*.

under the Medicare Act. (Footnotes omitted).[22]

As in *Salfi* and in *Association of American Medical Colleges*, the Act here provides "both the standing and the substantive basis" for Plaintiff's claims.

Plaintiff's additional contention is that, since the administrative process is not constitutionally equipped to deal with the challenges involved here, this Court does have jurisdiction under 28 U.S.C. § 1331(a). A similar argument was also addressed in *Association of American Medical Colleges v. Califano*. Appellant there contended that it could not obtain relief from the Secretary's allegedly defective regulation through the Act's administrative channels, because the Review Board was not empowered to overturn any regulation of the Secretary. Relying again on *Salfi*, the court stated:

> The *Salfi* plaintiffs clearly could not have obtained from the Secretary a ruling of unconstitutionality of a statute that the Secretary was bound to enforce, yet their action was denied federal-question jurisdiction, and resort to the administrative process was required. Appellant's contention that the availability of federal-question jurisdiction of this lawsuit depends upon whether the issues in dispute can be dealt with better at an administrative hearing than in a judicial proceeding must accordingly fail.[23]

Likewise, Plaintiff's contention here must fail.[24]

■ Plaintiff Rhode Island Hospital, because it is dissatisfied with the Schedule of Limits established and to be established under the regulations, seeks to have those regulations and that schedule and any similar schedules declared unconstitutional. It acknowledges that the regulations provide a means, called the exception process,[25]

whereby a provider may argue for reimbursement beyond the per diem limits established by the Secretary. Plaintiff asserts that to require it to resort to the exception process would impose an overwhelming burden. It claims that eligibility for an exception on the basis of "atypical services"[26] (the only exception under which Plaintiff insists it could apply for relief) would be difficult, if not impossible of proof. At the same time, it admits that exceptions, albeit few, have been granted on such grounds.

Plaintiff would have this Court decide, in advance of its testing its case through administrative channels, that the Secretary's regulations and schedule ought to be struck down. This Court refuses to make any such determination.

■ Plaintiff has also asserted that a part of its claim arises under Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* (entitled Grants to States for Medical Assistance Programs—short name, Medicaid). Plaintiff contends that jurisdiction cannot therefore be affected by the requirements of the administrative machinery established under the Medicare Act, as the provisions thereunder are not incorporated into the Medicaid Act.

Plaintiff's Title XIX attack on the Section 223 limits would be otherwise persuasive were it not for the following facts. First, Section 223, Pub.L.No.92–603 was an amendment to 42 U.S.C. § 1395x(v)—that is, to the portion of the *Medicare* Act which permits the Secretary to promulgate regulations establishing methods for determining reasonable costs for efficient delivery of health services, for purposes of Title XVIII (*Medicare*) considerations.

Second, 42 U.S.C. § 1396 of the Medicaid Act authorizes appropriations to be made

22. *Association of Am. Medical Colleges v. Califano*, 186 U.S.App.D.C. at 276, 569 F.2d at 107.

23. *Id.* 186 U.S.App.D.C. at 277, 569 F.2d at 108.

24. *But see Hopewell Nursing Home, Inc. v. Califano*, No. 75–1595 (D.S.C., December 20, 1977).

25. See 20 C.F.R. § 405.460(e), (f) (1977). See Note 5, *supra*, and related text.

26. 20 C.F.R. § 405.460(f)(2) (1977).

for each fiscal year for carrying out the purposes of the *Medicaid* Act. The sums appropriated under this section are to be made payable *to the states* whose plans for medical assistance have been submitted to and approved by the Secretary of Health, Education and Welfare. Section 1396a establishes the parameters for such plans. It provides:

> (a) A State plan for medical assistance must—
>
>> (30) provide such methods and procedures relating to the utilization of, and the *payment* for care and services available under the plan. (Emphasis added).

Thus, it is clear that procedure and methods for reimbursement are the responsibilities of the State in Medicaid relationships.

Plaintiff cites *Springdale Convalescent Center v. Mathews*, 545 F.2d 943 (5th Cir. 1977) as authority for the proposition that to the extent this controversy relates to Medicaid, this Court's jurisdiction is unquestioned. In that case, the court did find jurisdiction for Plaintiff's constitutional attack on a particular Title XVIII regulation promulgated by the Secretary.[27] There, however, the thrust of Plaintiff's action was to enjoin the Secretary of Health, Education and Welfare from terminating its status as a *Medicaid* provider. Consequently, the court held that the action arose under the Medicaid Act. Since the Medicaid Act does not incorporate the provisions of the Medicare Act nor provide a statutory grant of jurisdiction, the court determined "We are not precluded from finding . . that 'nonstatutory' jurisdiction to review is available". *Springdale Convalescent Center* at 949.

The present action cannot be said to arise under the Medicaid Act. The only relation this action bears to that Act is Plaintiff's mere status as a provider of Medicaid services. There is nothing like the controversy over whether the Secretary properly terminated Plaintiff's Medicaid status as oc-

curred in *Springdale Convalescent Center.* This Court will not permit Plaintiff to invoke a "nonstatutory" grant of jurisdiction merely by claiming that, by virtue of its position as a Medicaid provider, this action arises under Title XIX.

SO ORDERED.

---

**27.** 20 C.F.R. § 405.415(3) (1975), promulgated pursuant to 1395x(v)(1)(A)(ii), provides for recapture of accelerated depreciation charges.