**JOHN MUIR MEMORIAL HOSPITAL, INC., a nonprofit corporation, doing business as John Muir Memorial Hospital, Plaintiff,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Arthur P. Owens, William E. Arnstein, Philip D. Bonnett, M. D., Harold Hinderer, Stanley P. Wilcox, Members of the Provider Reimbursement Review Board, Blue Cross Association, and Blue Cross of Northern California, Defendants.**

No. C–77–1854–CBR.

United States District Court,
N. D. California.

Sept. 22, 1978.

Weissburg & Aronson, Inc., Robert A. Klein, Patric Hooper, Los Angeles, Cal., for plaintiff.

G. William Hunter, U. S. Atty., George Christopher Stroll, Asst. U. S. Atty., San Francisco, Cal., Sanford Teplitzky, Dept. of Health, Education and Welfare, Baltimore, Md., for defendant Califano.

## MEMORANDUM OF OPINION

RENFREW, District Judge.

This is a suit for mandamus and declaratory relief brought by plaintiff John Muir

Memorial Hospital, Inc. ("Muir"), under Title XVIII of the Social Security Act (42 U.S.C. §§ 1395 *et seq.*), the Declaratory Relief Act (28 U.S.C. § 2201), and the Fifth Amendment. The action is based on defendants' refusal to allow plaintiff to reopen its 1973 and 1974 "cost reports" to reflect certain interest payments as expenses rather than as capital items.

In 1965, Congress enacted Title XVIII of the Social Security Act, known as Medicare, to provide federal reimbursement for medical care to the aged and disabled.[1] The program provides hospital insurance benefits to eligible individuals who receive hospital services from specially designated "providers." Plaintiff Muir operates a hospital as defined by 42 U.S.C. § 1395x(e) and is a "provider" by virtue of having filed an agreement with the Secretary of Health, Education, and Welfare ("HEW") pursuant to 42 U.S.C. § 1395cc(a)(1).

As a provider, plaintiff is entitled to receive reimbursement from the Secretary for the "reasonable cost" of its hospital services. *See* 42 U.S.C. §§ 1395f(b)(1), 1395x(v)(1)(A). Plaintiff receives this reimbursement from a private organization that acts as the government's fiscal intermediary. *See* 42 U.S.C. § 1395h.[2] The fiscal intermediary between Muir and the Secretary is defendant Blue Cross Association, which has delegated its intermediary duties to defendant Blue Cross of Northern California ("BCNC"), one of its local plan organizations.

BCNC, as fiscal intermediary, has no vested interest in the expenditure of the government funds. Its function is merely to determine that the amount of payment accurately reflects the reasonable costs of services rendered to program beneficiaries. Under statute, and because a hospital's liquidity needs would be impaired if reimbursements were made only once a year,

the reimbursement scheme proceeds in two parts. First, the intermediary makes not less than monthly lump sum payments to the provider, based on estimates that are subject to subsequent retroactive adjustment. *See* 42 U.S.C. §§ 1395g, 1395x(v)(1)(A)(ii); 20 C.F.R. §§ 405.-402(b)(1), 405.402(b)(2), 405.454. Second, the intermediary makes a final determination as to how much reimbursement is due after the close of the provider's fiscal year; this determination is based on a cost report filed by the provider. 20 C.F.R. § 405.-405(b). Among the costs for which a provider is entitled to reimbursement is the interest cost on current and capital indebtedness. 20 C.F.R. § 405.419. It is the formula used to calculate these costs in the 1973 and 1974 cost reports that plaintiff ultimately seeks to challenge by bringing this lawsuit.

In 1973, plaintiff began construction of a nine million dollar addition to its existing hospital. This addition increased the number of beds; provided services for intensive care, coronary care, and intermediate care patients; and created substantial space for support services. The project was financed with bank loans and with a long-term mortgage on the hospital's land and buildings. Plaintiff paid $166,000 in interest on this indebtedness in 1973 and $366,000 in 1974.

Prior to 1973, plaintiff had always expensed its interest costs as they were incurred. However, on its 1973 and 1974 Medicare cost reports, plaintiff treated the interest payments on the construction financing as a capital item. It did so to conform to the accounting procedures set out in the Provider Reimbursement Manual, HIM–15, § 206, a manual that provides guidance for the implementation of Medicare regulations regarding the reasonable cost of provider services.[3] As a result of

---

1. Pub.L.No. 89–97, 79 Stat. 291, as amended; 42 U.S.C. §§ 1395 *et seq.*

2. Providers who do not wish to deal with the private intermediaries may seek reimbursement directly from the Secretary. 20 C.F.R. §§ 405.651(a), 405.654.

3. Section 206 provides:

"Frequently, providers may borrow funds to construct facilities or to enlarge existing facilities. Usually, construction of facilities will extend over a long period of time, during which interest costs on the loan are incurred. Interest costs incurred during the period of con-

using the capitalization method of accounting rather than the expensing method, plaintiff's net reimbursed costs were $60,-179 less in 1973 and $134,694 less in 1974. Defendant BCNC accepted and approved plaintiff's cost report for 1973 on January 31, 1975 and for 1974 on December 23, 1975. Plaintiff did not seek administrative review of these decisions.[4]

On March 11, 1976, plaintiff requested that BCNC reopen its 1973 and 1974 cost reports to allow recomputation of the interest costs according to the expensing method.[5] BCNC denied this request on March 18, 1976, because plaintiff had not supplied sufficient information. Plaintiff then filed a more complete Amended Request for Reopening the Cost Reports on September 23, 1976. This request was similarly denied by BCNC on November 23, 1976.[6]

Having been unable to secure relief from BCNC, plaintiff filed a Request for a Hearing with defendant Provider Reimbursement Review Board ("PRRB") on February 22, 1977.[7] On April 4, 1977, after BCNC had filed an opposition to plaintiff's request for a hearing and plaintiff had filed a rebuttal to that opposition, the PRRB determined that it was without jurisdiction to hear plaintiff's claim. It based this decision on three factors: first, plaintiff did not file its request for a hearing in timely fashion (20 C.F.R. § 405.1841(a)); second, plaintiff did not meet the minimum monetary jurisdictional requirement (20 C.F.R. § 405.-1839(a)); and third, the decision whether to reopen a determination could only be made by the fiscal intermediary that made that determination (20 C.F.R. § 405.1885(c)). Four and one half months after receiving the PRRB's letter, on August 22, 1977, plaintiff filed this lawsuit.

Plaintiff seeks two types of relief from this Court. First, plaintiff seeks a declaration and order that defendant BCNC is required to reopen the cost reports for 1973 and 1974 to reflect the expensing, rather than the capitalizing, of the interest costs. In this regard, it contends that Manual Section 206, the regulation requiring capitalizing of interest costs, is invalid, and that 42 U.S.C. § 1395x(v)(1)(A) requires the Secretary to enact regulations that "provide for the making of suitable retroactive corrective adjustments" to a reimbursement when the methods of determining costs prove to be inadequate. Second, plaintiff seeks a declaration and order that it is entitled to a full and complete hearing before defendant PRRB on the issues of the

struction must be capitalized as a part of the cost of the facility. The period of construction is considered to extend to the date the facility is put into use for patient care.

"If the construction is an addition to an existing facility, interest incurred during the construction period on funds borrowed to construct the addition must be capitalized as a cost of the addition. After the construction period, interest on the loan is allowable as an operating cost. * * *"

4. In 1972, Congress established the Provider Reimbursement Review Board ("PRRB") and gave it jurisdiction to grant providers a hearing with respect to cost reports in cases where the provider was dissatisfied with the final determination of a fiscal intermediary as to the amount of total program reimbursement due. 42 U.S.C. § 1395oo(a)(1)(A). However, it restricted this avenue of administrative review to instances where the provider filed the request for a hearing "within 180 days after notice of the intermediary's final determination * * *." 42 U.S.C. § 1395oo(a)(3); 20 C.F.R. § 405.1841. Plaintiff never filed such a request.

5. Plaintiff made this request in light of the decision in Saint Francis Memorial Hospital v. Weinberger, 413 F.Supp. 323 (N.D.Cal.1976), a decision which it interpreted as holding that Manual Section 206 was invalid.

6. The letter from BCNC stated in part:
"We regret that we must deny your cost report reopening request. To do otherwise would require a finding on our part that HIM–15, Section 206 was invalid and that the capitalization of interest expense during construction constitutes a material error in the final settlements for 1973 and 1974. We are unable to agree with you on either of these points."

7. The PRRB was established by Public Law No. 92–603, 86 Stat. 1420, adopted October 30, 1972 (42 U.S.C. § 1395oo). Defendants Owens, Arnstein, Bonnet, Henderer, and Wilcox are all members of the PRRB and are being sued in their official capacities.

validity of Section 206 of the Manual and of the right to amend the cost reports. It claims that this is a due process right, guaranteed by the Fifth Amendment, which is based on its property interest in adequate and proper reimbursement.

On December 14, 1977, defendants filed a motion to dismiss on the grounds that this Court lacks subject matter jurisdiction over the action and that plaintiff has failed to state a claim upon which relief can be granted. The case was thereafter reassigned to the undersigned judge and the motion to dismiss was heard on June 8, 1978. For the reasons stated below, the Court will grant defendant's motion.

### A. *28 U.S.C. § 1331*

Section 1331(a) of Title 28, providing for federal question jurisdiction, gives district courts original jurisdiction of all civil actions brought against the United States which arise under the Constitution, laws, or treaties of the United States, regardless of the amount in controversy. Plaintiff contends that this statute confers jurisdiction in this action. This Court does not agree.

Federal jurisdiction to review administrative decisions under the Social Security Act is sharply limited by statute. Section 405(h) of the Act states:

> "The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal or governmental agency except as herein provided. *No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 of Title 28* [28 U.S.C. § 1331] *to recover on any claim arising under this subchap-*

ter." 42 U.S.C. § 405(h) (emphasis added).

Although this section by its terms eliminates § 1331 jurisdiction only from claims "arising under this subchapter" (Title II of the Social Security Act), Congress has extended its prohibition to claims arising under the Medicare Act as well. 42 U.S.C. § 1395ii.[8] Therefore, because § 405(h) clearly provides that "no action" shall be brought under § 1331, this Court is precluded from asserting federal question jurisdiction if plaintiff's suit is construed as a claim arising under the Medicare Act.[9] *See Weinberger v. Salfi*, 422 U.S. 749, 757, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Assoc. of Amer. Medical Colleges v. Califano*, 186 U.S.App.D.C. 270, 275, 569 F.2d 101, 107 (1977); *South Windsor Convalescent Home, Inc. v. Mathews*, 541 F.2d 910, 912 (2 Cir. 1976).

Plaintiff's first claim is based on its allegation that BCNC improperly failed to reopen the 1973 and 1974 cost reports. In bringing this claim, plaintiff is seeking greater reimbursement under the Medicare Act for the "reasonable costs" it incurred in providing hospital services to eligible beneficiaries. *See* 42 U.S.C. § 1395x(v)(1)(A). The Supreme Court has suggested that such a claim should be construed as a "claim arising under the Act" within the meaning of § 405(h); as a result, no federal question jurisdiction can be asserted over it.

In *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), plaintiff sought judicial review of HEW's refusal to reopen a previously adjudicated claim for Social Security benefits. *Id.* at 103, 97 S.Ct. 980. The Supreme Court found that the federal courts lacked subject matter jurisdiction to hear the case under the Administrative Procedure Act, § 405(g) of the Social Security Act, or § 1331. In so doing, it

---

**8.** "The provisions * * * of subsections * * * (h) * * * of section 405 of this title, shall also apply with respect to this subchapter to the same extent as they are applicable with respect to subchapter II of this chapter."

**9.** Because § 405(h) allows for review "as herein provided," federal courts can review certain

decisions of the Secretary pursuant to 42 U.S.C. § 1395oo(f), Pub.L.No. 92–603, 86 Stat. 1420 (1972), *as amended*, Pub.L.No. 93–484, 88 Stat. 1459 (1974). However, that section does not apply to this case because there has been no final decision of the PRRB made after a hearing. *See* n. 10, *infra*, and accompanying text.

noted that the preclusion of jurisdiction statute, § 405(h), was applicable to plaintiff's claim, because a suit to force reopening of an adjudication of benefits claim is one which "arise[s] under" the Social Security Act. *Id.* at 106, 97 S.Ct. 980.

The same result can be reached by examining the reasoning of *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). In *Salfi,* appellants challenged a Social Security Act provision that excluded wives and stepchildren from benefits if they had not been related to the deceased wage earner for more than nine months. Conceding that the claim had significant constitutional components, the Supreme Court also noted that it arose under the Social Security Act for the purposes of § 405(h). "For not only is it Social Security benefits which appellees seek to recover, but it is the Social Security Act which provides both the standing and the substantive basis for the presentation of their constitutional contentions." *Id.* at 760–761, 95 S.Ct. at 2464. Similarly, in the instant case, it is the Medicare Act that provides plaintiff with its standing and the substantive basis for its suit to reopen the cost reports. As a result, the bar of § 405(h) must be applied. *Accord, Assoc. of Amer. Medical Colleges v. Califano,* 186 U.S.App. D.C. 270, 275, 569 F.2d 101, 107 (1977) (Medicare Act supplies standing and substantive basis for providers' challenge to regulations limiting reimbursable costs); *Rhode Island Hospital v. Califano,* 447 F.Supp. 703, 706–707, 709 (D.R.I.1978) (providers' suit to declare unconstitutional Medicare regulations governing reasonable costs of inpatient care is barred by § 405(h)). *See also Chelsea Community Hospital v. Michigan Blue Cross,* 436 F.Supp. 1050, 1056 (E.D.Mich.1977); *Behlen Community Hospital v. Blue Cross of Nebraska,* 419 F.Supp. 683, 685 (D.Neb. 1976).

There is a further reason why this Court declines to review BCNC's decision not to reopen the 1973 and 1974 cost reports. When Congress amended the Medicare Act in 1972 and 1974, it provided for only limited judicial review. Section 1395oo(f)(1) permits a provider to seek review in the courts only after the Provider Reimbursement Review Board ("PRRB") has rendered a "final decision." The PRRB can render a final decision only if the provider has requested a hearing before it within 180 days after receiving notice of the fiscal intermediary's final determination. 42 U.S.C. § 1395oo(a). Plaintiff Muir did not file such a request for a hearing.[10]

Rather, plaintiff now seeks to circumvent Congress' intent to limit judicial review by asking this Court to accept jurisdiction directly over BCNC's refusal to reopen the cost reports. The Supreme Court has recently considered a similar attempt to seek review of HEW's refusal to reopen a claim for benefits and stated:

" * * * [A]n interpretation that would allow a claimant judicial review simply by filing—and being denied—a petition to reopen his claim would frustrate the congressional purpose, plainly evidenced in [the judicial review section of the Social Security Act], to impose a 60-day limitation upon judicial review of the Secretary's final decision on the initial claim for benefits. [Citation omitted.] Congress' determination * * * is a policy choice obviously designed to forestall repetitive or belated litigation of stale eligibility claims. *Califano v. Sanders, supra,* 430 U.S. at 108, 97 S.Ct. at 986.

This Court declines to upset the Congressional policy of limiting judicial review in the instant case and holds that it has no jurisdiction to review BCNC's refusal to reopen.[11]

**10.** Plaintiff's Request for a Hearing was filed on February 22, 1977, over a year after the second cost report was approved and two years after the first was approved. Furthermore, plaintiff cannot claim it is sufficient that the Request was filed within 180 days after BCNC denied the request for reopening, because a denial of a reopening request is not a "final determination * * * as to the amount of total program reimbursement due." 42 U.S.C. § 1395oo(a)(1)(A). *See* 20 C.F.R. § 405.1885(c).

**11.** To rule otherwise would be to render a decision that a cost report can never be closed, for it would allow a provider to obtain a substan-

Plaintiff's second claim, based on its assertion that it is entitled to a hearing before the PRRB by virtue of its property interest in adequate and proper reimbursement, appears to be a claim arising under the Medicare Act (and therefore within the bar of § 405(h)) as well. In *Salfi, supra,* for example, the Supreme Court first noted that it would be "fruitless to contend that appellees' claim is one which does not arise under the Constitution, since their constitutional arguments are critical to their complaint." 422 U.S. at 760, 95 S.Ct. at 2464. However, the Court also concluded that "it is just as fruitless to argue that this action does not also arise under the Social Security Act." *Ibid.*

The determination that plaintiff's constitutional claim arises under the Medicare Act does not conclude the matter. For as plaintiff points out, many courts have suggested that the jurisdictional bar of 42 U.S.C. § 405(h) cannot be strictly applied where the result would be to foreclose all possible forums in which a plaintiff could assert its constitutional claims.[12] *See Assoc. of Amer. Medical Colleges, supra,* 186 U.S.App.D.C. at 275 n.55, 569 F.2d at 107 n.55 (dictum); *South Windsor Convalescent Home, Inc. v. Mathews,* 541 F.2d 910, 913–

914 (2 Cir. 1976) ("[w]e doubt that the Supreme Court intended its reading of § 405(h) in *Salfi* to have the effect of precluding federal jurisdiction over constitutional questions"); *St. Louis University v. Blue Cross Hosp. Service,* 537 F.2d 283, 291–292 (8 Cir.), *cert. denied,* 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976); *Whitecliff, Inc. v. United States,* 536 F.2d 347, 350, 210 Ct.Cl. 53 (1976), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977); *Pacemaker Monitor Corp. v. United States,* 440 F.Supp. 473, 476–477 (S.D.Fla.1977). *See also Califano v. Sanders, supra,* 430 U.S. at 109, 97 S.Ct. at 986 ("when constitutional questions are in issue, the availability of judicial review is presumed, and we will not read a statutory scheme to take the 'extraordinary' step of foreclosing jurisdiction unless Congress' intent to do so is manifested by 'clear and convincing' evidence"); *Johnson v. Robison,* 415 U.S. 361, 366–367, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974) (section of Veterans' Act that precludes judicial review of Administrator's decisions does not bar consideration of appellee's constitutional claims). Indeed, there are cases in which a court asserted jurisdiction under § 1331 just because plaintiffs would otherwise have no constitutional forum.[13] *See, e. g., St. Louis University v.*

---

tive review of its cost report merely by filing a request for reopening, or repeated requests for reopening, at any time after the cost report had been filed.

12. In *Salfi,* although the Court read § 405(h) to preclude § 1331 jurisdiction, and although it dismissed the class action for want of subject matter jurisdiction, it did permit the named plaintiffs to predicate judicial review on 42 U.S.C. § 405(g). That section provides:

"Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow * * *."

Because the named plaintiffs had received a final decision from the Secretary, the Court held that § 405(g) was available as a jurisdictional basis for the suit. 422 U.S. at 767, 95 S.Ct. 2457. As a result, plaintiffs had a forum in which to assert their constitutional claim.

Jurisdiction in this case cannot be predicated on § 405(g), however. Section 1395ii of Title

42, the section that makes § 405(h) of the Social Security Act applicable to the Medicare Act, does not do the same for § 405(g). Courts are in universal agreement that the judicial review provisions of § 405(g) are therefore not applicable to the Medicare Act. *See, e. g., Assoc. of Amer. Medical Colleges, supra,* 186 U.S.App.D.C. at 274 n.53, 569 F.2d at 106 n.53; *Trustees of Indiana Univ. v. Blue Cross Assoc.,* 445 F.Supp. 617, 618–619 (S.D.Ind.1977).

13. In most instances, courts that have held § 1331 unavailable have avoided the foreclosure issue by predicating jurisdiction on the APA or the Tucker Act, 28 U.S.C. § 1491. *See, e. g., Trinity Memorial Hosp. of Cudahy, Inc. v. Assoc. Hosp. Services, Inc.,* 570 F.2d 660, 667 (7 Cir. 1977) (Tucker Act); *Adams Nursing Home of Williamstown, Inc. v. Matthews,* 548 F.2d 1077, 1079–1080 (1 Cir. 1977) (APA); *South Windsor Convalescent Home, Inc. v. Mathews,* 541 F.2d 910, 913–914 (2 Cir. 1976) (Tucker Act); *Whitecliff, Inc. v. United States,* 536 F.2d 347, 350–351, 210 Ct.Cl. 53 (1976), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977) (Tucker Act). However, there is also a line of cases that hold that the

*Blue Cross Hosp. Service, supra,* 537 F.2d 283; *Pacemaker Monitor Corp. v. United States, supra,* 440 F.Supp. at 477; *Daytona Beach General Hosp., Inc. v. Weinberger,* 435 F.Supp. 891, 899–900 (M.D.Fla.1977); *Behlen Community Hospital v. Blue Cross of Nebraska, supra,* 419 F.Supp. at 687. However, these cases are distinguishable from the case at bar.[14]

In *St. Louis, Daytona Beach,* and *Behlen,* plaintiffs argued not that they had been improperly denied a hearing as in this case, but that the hearing they had been granted was constitutionally defective.[15] 537 F.2d at 287; 435 F.Supp. at 899; 419 F.Supp. at 685, 687. The basis for these claims was plaintiffs' contention that each of the hearing committees was comprised exclusively of employees and appointees of the fiscal intermediary, and that they were therefore not impartial bodies.

In these three cases, plaintiffs had no opportunity to raise their due process claims except in federal court. The PRRB had not yet been established by Congress, so plaintiffs had no administrative forum in which to present their arguments. 537 F.2d at 289 n.8; 419 F.Supp. at 686 n.1. Unless the court asserted jurisdiction, the constitutional rights at issue would have been lost, and they would have been lost through no fault of the plaintiffs.

Similarly, in *Pacemaker,* plaintiff was a supplier of medical equipment who claimed he had no opportunity to be heard before HEW. set the allowable rates for his equipment. But there was no opportunity to raise this claim before the agency. No procedures for administrative review had been established. Plaintiff was challenging the deficiencies inherent in the system of review itself.

By contrast, Muir has a constitutional cause of action only because it failed to pursue its administrative remedies. The hospital claims that the PRRB deprived it of its due process rights under the Fifth Amendment by refusing to grant it a hearing on the issues of whether Manual Section 206 was invalid, and if so, whether the cost reports which relied on it could be amended. However, it is clear that plaintiff *did* have an opportunity to be heard before the PRRB on this issue; the hearing was never held only because plaintiff failed to file a timely request.

Prior to filing its 1973 and 1974 cost reports, plaintiff had been using the expensing method of computing its interest costs. Presumably, it knew that a shift to the capitalization method would result in its being entitled to less reimbursement. But plaintiff could have avoided this financial loss by challenging the validity or application of Manual Section 206 at the time it filed the costs reports.

Plaintiff could have made this challenge in two ways. First, it could have considered that even though the PRRB probably cannot invalidate a regulation as con-

---

federal courts have no jurisdiction to hear claims based on the Medicare Act at all unless the claim is brought under the judicial review section of the statute, 42 U.S.C. § 1395oo(f). See, *e. g., Hazelwood Chronic & Conval. Hosp., Inc. v. Califano,* 450 F.Supp. 1158, 1161 (D.Or. 1978) (no jurisdiction under § 1331 regardless of unavailability of alternative jurisdictional statutes; however, plaintiffs can proceed in Court of Claims under Tucker Act); *Trustees of Indiana Univ. v. Blue Cross Assoc.,* 445 F.Supp. 617, 619 (S.D.Ind.1977) ("no constitutional or statutory judicial review is provided for by the [Medicare Act]"; on motion to revoke order of dismissal, the court transferred the case to the Court of Claims); *St. Elizabeth Hosp. v. Califano,* 441 F.Supp. 158, 159–160 (E.D.Ky.1977); *Medical Center of Independence v. Califano,* 433 F.Supp. 837, 841 (W.D. Mo.1977); *Mercy Hosp. & Med. Cntr. v. Califa-*

*no,* Civ.No. 76–848–T (S.D.Cal. Order Granting Summary Judgment filed December 13, 1977, at 2–3).

14. This Court also takes note of the Seventh Circuit's decision to "reject the position taken in \* \* \* *St. Louis University* holding that § 1331 afforded jurisdiction for due process claims." *Trinity Memorial Hosp. of Cudahy, Inc. v. Assoc. Hosp. Services, Inc.,* 570 F.2d 660, 667 (7 Cir. 1977). The decisions in *Daytona Beach* and *Behlen* rely heavily on *St. Louis.*

15. In *Daytona Beach,* plaintiffs also alleged that the method used to determine how much money would be recouped due to their "overutilization" of services violated due process. 435 F.Supp. at 899.

trary to law, it is fully empowered to grant exceptions to regulations in particular cases. *See* 20 C.F.R. § 405.460(e), (f); *Assoc. of Amer. Medical Colleges, supra,* 186 U.S.App.D.C. at 276, n.63, 569 F.2d at 108 n.63. If plaintiff had requested a hearing before the PRRB and had then sought an exception to section 206, it would not only have received its hearing,[16] but it could perhaps have obtained the relief it sought. Second, even if the plaintiff considered the exception procedure unduly burdensome, it could still have filed a timely request for a hearing, then presented its reimbursement claim without pursuing an exception. This was the course of action taken by plaintiffs in *Saint Francis Memorial Hospital v. Weinberger,* 413 F.Supp. 323 (N.D.Cal.1976). Under either approach, even if the claims were rejected, plaintiff could have received a hearing, and judicial review of the PRRB's final decision would have been available in the district court. 42 U.S.C. § 1395oo(f); *Assoc. of Amer. Medical Colleges, supra,* 186 U.S.App.D.C. at 278, 569 F.2d at 110. Because plaintiff did not pursue these procedures and because its claim of denial of due process arises only as a result of this failure, this Court declines to create an exception to § 405(h) in this case and concludes that jurisdiction is lacking under 28 U.S.C. § 1331.

The Court is persuaded by the reasoning in the recent case of *Rhode Island Hospital v. Califano, supra,* 447 F.Supp. 703. In that case, a provider brought before the district court a challenge to the constitutionality of Medicare regulations that determine the reasonableness of costs for routine inpatient services. *Id.* at 709. The court refused to assert jurisdiction over the action, relying on the bar of § 405(h). In so doing, it noted that plaintiff had failed to seek an exception from the regulation from the PRRB and concluded:

"On its face, § 405(h) seems to preclude federal court jurisdiction over an action in which a Plaintiff has failed to pursue the administrative remedies available under the Act. Here, Plaintiff Hospital has filed to seek any administrative hearing to which it is entitled, as for example under § 1395oo(a)." *Id.* at 707.

*See also Weinberger v. Salfi, supra,* 422 U.S. at 762, 95 S.Ct. at 2465 ("the plain words of * * * § 405(h) do not preclude constitutional challenges. They simply require that they be brought under jurisdictional grants contained in the Act * * *"); *Milo Community Hosp. v. Weinberger,* 525 F.2d 144, 145, 147 (1 Cir. 1975) (no jurisdiction over provider's claim that its termination from Medicare program violated due process and equal protection clauses; plaintiff failed to seek available administrative remedies).

In sum, this Court lacks subject matter jurisdiction under § 1331 to hear plaintiff's suit because of the bar of 42 U.S.C. § 405(h), particularly in light of the fact that plaintiff's alleged constitutional right to a hearing arose only because plaintiff was dilatory in filing a Request for a Hearing with the PRRB, an administrative option that was available to plaintiff and that would ultimately have permitted plaintiff to seek judicial review of the administrative decision pursuant to the judicial review section of the Medicare Act, 42 U.S.C. § 1395oo(f)(1).

### B. *28 U.S.C. § 1361*

Plaintiff next contends that even if this Court lacks jurisdiction under § 1331, it can assert mandamus jurisdiction pursuant to 28 U.S.C. § 1361 [17] to compel defendants to promulgate regulations to "provide for the making of suitable retroactive corrective adjustments * * *." *See* 42 U.S.C. § 1395x(v)(1)(A)(ii). This contention must be rejected.

---

**16.** This hearing would be conducted pursuant to the regulations contained at 20 C.F.R. §§ 405.1841 *et seq.* Thus, it would be an adversary hearing, in which the parties had the right to subpoena witnesses, present evidence, be represented by counsel, and cross-examine opposing witnesses. *See* 42 U.S.C. § 1395oo(c).

**17.** "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

The preclusion of review provision of 42 U.S.C. § 405(h), which states "[n]o action * * * shall be brought under *section 41 of Title 28* to recover on any claim arising under this subchapter" (emphasis added), does not bar assertion of mandamus jurisdiction in suits arising under the Medicare Act as explicitly as it bars federal question jurisdiction. The underscored language was specifically directed toward the predecessor to § 1331, because at the time § 405(h) was enacted, section 41 encompassed all possible sources of federal court jurisdiction, including federal question jurisdiction.[18] However, the statutory language did not necessarily reach the Mandamus Act, because § 1361 was not enacted until 1962. *See* Mandamus and Venue Act of 1962, Pub.L.No. 87–748, 76 Stat. 744. Thus, the Court must now determine whether, under circumstances such as the case at bar, Congress intended § 405(h) to preclude all federal court jurisdiction not provided for by the Act itself, or whether it intended the jurisdictional bar to extend only to those jurisdictional statutes which were in existence when § 405(h) was enacted.

In most instances, particularly where a claim for benefits was made or where plaintiffs failed to exhaust their administrative remedies, the courts have included the Mandamus Act within the statutory bars of § 405(h). *See, e. g., Assoc. of Amer. Medical Colleges, supra,* 186 U.S.App.D.C. at 280, 569 F.2d at 111; *RoAne v. Mathews,* 538 F.2d 852, 854 (9 Cir. 1976); *Medical Center of Independence v. Califano,* 433 F.Supp. 837, 841–842 (W.D.Mo.1977); *Morris v. Weinberger,* 401 F.Supp. 1071, 1084 (D.Md. 1975); *Mercy Hosp. & Med. Cntr. v. Califano,* Civ.No. 76–848–T (S.D.Cal., Order Granting Summary Judgment filed December 13, 1977, at 3); *Bussey v. Califano,* Civ.No. 74–2335A (N.D.Ga., Order Adopting Magistrate's Report and Recommendation filed September 30, 1977, at 6); *Goleta Valley Community Hosp. v. Califano,* Civ. No. 76–2502–WMB (C.D.Cal., Findings of Fact and Conclusions of Law filed August 10,

1977). However, other courts have found mandamus to be appropriate despite the existence of § 405(h). *See, e. g., Elliott v. Weinberger,* 564 F.2d 1219, 1226 (9 Cir. 1977) (dictum) (suit challenging denial of a hearing prior to recoupment of excess benefits payments); *White v. Mathews,* 559 F.2d 852, 856 (2 Cir. 1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978) (suit challenging slow pace of claim adjudication); *Ryan v. Shea,* 525 F.2d 268, 272 (10 Cir. 1975) (suit seeking notice and hearing prior to termination of benefits); *Pacemaker Monitor Corp. v. United States, supra,* 440 F.Supp. at 480–481 (suit challenging denial of a hearing prior to setting of allowable rate charge). In the instant case, the first line of authorities appears to be controlling.

Many of the considerations mentioned in the first section of this opinion are persuasive in reaching this decision. This is not a case in which plaintiff can claim that the administrative procedure provides no forum for assertion of its statutory and constitutional claims. Rather, plaintiff had an opportunity to challenge the requirement that it capitalize its interest costs, but chose to forego it. Given that mandamus is an extraordinary remedy, which should be employed only in exceptional circumstances, this Court will not base jurisdiction on it here. *See Haneke v. Sec'y of HEW,* 175 U.S.App.D.C. 329, 334, n.15, 535 F.2d 1291, 1296 & n.15 (1976).

The United States Court of Appeals for the District of Columbia Circuit was faced with a similar problem in *Assoc. of Amer. Medical Colleges v. Califano, supra,* 186 U.S.App.D.C. 270, 569 F.2d 101. In that case, an association of providers sought to challenge Medicare regulations that fixed limits on reimbursable costs. In formulating this challenge, plaintiffs failed to pursue all available remedies; as in the case at bar, they did not bring their claim before the PRRB prior to seeking judicial review. *Id.* 186 U.S.App.D.C. at 270, 569 F.2d at 110.

---

**18.** The only statutes that it excluded were several special purpose jurisdictional grants of no relevance here. *See Weinberger v. Salfi, supra,* 422 U.S. at 756 n.3, 95 S.Ct. 2457.

The Court of Appeals for the District of Columbia Circuit held that this failure to exhaust administrative remedies was fatal to plaintiff's assertion of mandamus jurisdiction. "[B]ecause Section 1395oo of the Medicare Act plainly authorized review of the action here, we hold that appellant may not rely upon the mandamus statute as a predicate for federal-court jurisdiction." *Id.* 186 U.S.App.D.C. at 280, 569 F.2d at 111. *Accord, RoAne v. Mathews, supra,* 538 F.2d at 854 (mandamus unavailable; failure to exhaust administrative remedies); *Medical Center of Independence v. Califano, supra,* 433 F.Supp. at 840–841 (same).

In none of the cases cited by plaintiff did this Court find a failure to pursue the review procedures set out in the Social Security Act. In *Ryan v. Shea, supra,* 525 F.2d 268, and *Pacemaker Monitor Corp. v. United States, supra,* 440 F.Supp. 473, for example, plaintiffs were challenging the very nature of the statutory review procedure, a procedure that plaintiffs claimed denied them their due process right to a hearing. In neither of these cases could plaintiff have obtained an administrative hearing followed by judicial review by complying with the statutory procedures.

By contrast, plaintiff in the case at bar might well have received the relief it sought had it pursued its administrative remedies. Certainly it would have received a hearing. At the hearing, the PRRB would have considered the right of plaintiff to expense its interest costs. After the PRRB's decision, the Secretary of HEW was empowered to consider plaintiff's claims as well. Even if neither the Secretary nor the PRRB granted the requested relief, at least the matter could have been considered—in accordance with the statutory review procedure—aided by the complete administrative record evidencing the agency's thoughts on plaintiff's claim.

 In conclusion, this Court lacks subject matter jurisdiction over plaintiff's lawsuit under § 1361 as well as under § 1331. Because the Medicare Act provides procedures for administrative review of plaintiff's claim, and because plaintiff would have been entitled to judicial review had it exhausted these administrative procedures, § 405(h) should be strictly applied. A plaintiff may not predicate its assertion of federal jurisdiction on any statute not contained within the Social Security Act if the Act itself provides procedures for review which are applicable to plaintiff's claim. *See Assoc. of Amer. Medical Colleges v. Califano, supra,* 186 U.S.App.D.C. at 281, 569 F.2d at 113.

Accordingly, IT IS HEREBY ORDERED that defendant's motion to dismiss is granted.

IT IS HEREBY FURTHER ORDERED that counsel for defendant shall prepare a form of judgment in accordance with this Memorandum of Opinion and submit it to the Court for execution within ten (10) days of the date hereof.