**CAMBRIDGE HOSPITAL ASSOCIATION, INC., formerly known as Memorial Hospital, Inc., Plaintiff,**

v.

**Otis R. BOWEN,[1] Secretary of Health and Human Services, Defendant.**

**Civ. No. 4–85–1353.**

United States District Court, D. Minnesota, Fourth Division.

March 4, 1986.

---

1. On December 13, 1985, Otis R. Bowen succeeded Margaret M. Heckler as Secretary of Health and Human Services, and thus the Court substituted Bowen for Heckler as the defendant. Fed.R.Civ.P. 25(d)(1); *see also* 42 U.S.C. § 405(g) (last sentence).

Eric J. Magnuson and Louise A. Dovre, Rider, Bennett, Egan & Arundel, Minneapolis, Minn., for plaintiff.

Francis X. Hermann, U.S. Atty., and Elissa G. Mautner and James Lackner, Asst. U.S. Attys., Minneapolis, Minn., and Donna Morros Weinstein, Regional Atty. and Anita M. Rowe, Asst. Regional Atty., Dept. of Health and Human Services, Chicago, Ill., for defendant.

**MEMORANDUM AND ORDER**

MacLAUGHLIN, District Judge.

This matter is before the Court on defendant's motion to dismiss or for summary judgment. Defendant's motion to dismiss will be granted.

**FACTS**

Plaintiff Cambridge Hospital Association, Inc. (Cambridge Hospital), formerly known as Cambridge Memorial Hospital, Inc., is an 86-bed non-profit acute care operating hospital located in Cambridge, Minnesota. Cambridge Hospital is and has been a provider of medical services to Medicare beneficiaries pursuant to Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395f(b), 1395g, and 1395x(v)(1)(a).

Pursuant to the Medicare Act plaintiff applied for operating cost reimbursement from the defendant, Secretary of Health and Human Services, for fiscal years 1980, 1981, and 1982. (Plaintiff's fiscal year ends September 30.) The Medicare Act authorizes provider reimbursement for costs incurred in providing in-patient hospital services to medicare beneficiaries. Following a routine audit, the plaintiff's "fiscal intermediary" (Blue Cross and Blue Shield of Minnesota) for each of the years in question issued a "notice of program reimbursement" disallowing certain expenses claimed by the plaintiff. The amount disallowed was $41,354 in 1980 and $44,753 in 1981.[2] The basis for the fiscal intermediary's decision to disallow certain of plaintiff's claimed expenses was its finding that plaintiff was not within the geographical borders of the Twin Cities Standard Metropolitan Statistical Area (SMSA).[3]

2. Blue Cross also disallowed certain 1982 costs submitted by plaintiff, however, that disallowance decision is not at issue here.

3. Under the applicable standards, an area qualifies as an SMSA in one of two ways: there is a city with a population of at least 50,000 in the area, or the area is an urbanized area of at least 50,000 with a total metropolitan statistical area population of at least 100,000. *See* 42 C.F.R. §§ 405.460, 460(b)(1)(ii). A provider may be reclassified only in the event that its original classification is at variance with the criteria established by the applicable regulations, *i.e.*, the original classification was in error. 42 C.F.R. § 405.460(d). Plaintiff applied for a re-

classification based on the 1980 census figures. The Secretary ruled that a county's SMSA status is generally effective only after it has been officially announced by the Office of Management and Budget even though the change may have been based on an earlier census, and that, even if OMB were to announce (as it did in 1983) that Isanti County was entitled to classification as an SMSA, the change would be applied prospectively, not retroactively. 42 C.F.R. § 405.460(a)(2). Finding that plaintiff was classified correctly for fiscal years 1980 and 1981 based on the criteria available at that time and that the classification system is not subject to retroactive change, the Secretary declined to reclassify

Under the Medicare Act, hospitals located within the SMSA are entitled to slightly higher reimbursement for certain incurred expenses. Prior to October, 1983,[4] Isanti County was designated as a non-SMSA county; however, due to population fluctuations, plaintiff in 1981 requested reclassification as an SMSA hospital.[5] Plaintiff's request for reclassification was approved by Blue Cross but denied by the Health Care Finance Administration. Accordingly, Blue Cross subsequently disallowed certain expenses calculated by plaintiff based on the Twin Cities SMSA urban wage index for fiscal years 1980 and 1981.

The plaintiff on January 31, 1984 filed notice of appeal from these decisions of the fiscal intermediary with the Provider Reimbursement Review Board (PRRB). Some 18 months later, on August 1, 1985, the PRRB dismissed plaintiff's claims for fiscal years 1980 and 1981 on the ground that they were untimely. Plaintiff subsequently brought this action, seeking review under the Administrative Procedure Act of the PRRB's dismissal of their 1980 and 1981 claims, on the ground that the agency's decision was arbitrary, capricious, and an abuse of discretion.

## DISCUSSION

The Medicare Act, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.*, created a comprehensive system of health care for the elderly and infirm. *Athens Community Hospital, Inc. v. Schweiker,* 686 F.2d 989, 991 (D.C.Cir. 1982), *modified,* 743 F.2d 1 (D.C.Cir.1984). Under the Act, certain institutions known as "providers" receive reimbursement for the "reasonable costs"[6] of services provided to qualified Medicare beneficiaries.[7] 42 U.S.C. §§ 1395x(v)(1)(A), 1395f(b), 1395x(u), 1395cc. Plaintiff is a "provider" as defined by the Act by virtue of having filed certain agreements with the defendant Secretary of Health and Human Services. 42 U.S.C. § 1395cc(a)(1), 1395x(u). Although the Secretary may directly reimburse a provider, 20 C.F.R. §§ 405.651(a), 405.654, the more common method of reimbursement is for the provider to appoint a "fiscal intermediary" which acts as the Secretary's agent for the purpose of reviewing claims and awarding reimbursement. 42 U.S.C. § 1395h. In the case at bar, Blue Cross and Blue Shield of Minnesota, a private insurance carrier, acts as the fiscal intermediary for the plaintiff.

The procedure for obtaining reimbursement under the Act is as follows. At the end of its fiscal year the provider submits to the intermediary a cost report.[8] Follow-

---

plaintiff for the years in question. *See* PRRB Official File, 25–26; PRRB Manual § 2510.3.

**4.** Isanti County was classified as an SMSA effective for cost reports beginning on or after October 1, 1983. The classification of Isanti County as an SMSA was announced by the Federal Office of Management and Budget September 1, 1983. 48 Fed.Reg. No. 171 (1983).

**5.** Plaintiff's argument for reclassification is essentially that, due to the fact that it competes with and has competed with SMSA-designated hospitals in Minneapolis/St. Paul, Minnesota and Forest Lake, Rush City, and Coon Rapids, Minnesota, it was entitled to SMSA classification from at least 1980, based on the 1980 census documenting dramatic population growth in Isanti County. *See* Transcript of Proceedings Before the Provider Reimbursement Review Board, No. 84–354 (Jan. 22, 1986).

**6.** Providers are entitled to recover the "reasonable cost" of covered services or the provider's "customary charge" for in-patient hospital service. 42 U.S.C. §§ 1395f(b), 1395x(u), 1395cc, *Humana of South Carolina, Inc. v. Califano,* 590 F.2d 1070, at 1073 (D.C.Cir.1978).

**7.** Providers are reimbursed by their fiscal intermediaries on an interim basis throughout the fiscal year based upon estimates of the costs of various services and projections of the number of medicare patient days. 42 U.S.C. § 1395g, 1395x(v)(1)(A)(ii); 20 C.F.R. §§ 405.402(b)(1), 405.402(b)(2), 405.454. This is done to avoid provider cash flow problems which might otherwise arise. After the close of the fiscal year, and after auditing the cost report submitted by the provider, the fiscal intermediary issues its "notice of program reimbursement" which entitles the provider to the difference between its interim payments and what the provider determines to be its total reimbursable costs.

**8.** The cost report must be filed within three months of fiscal year end, although a provider may be granted an additional thirty days for good cause. 42 C.F.R. § 405.453(f)(2)(i), (ii).

ing an audit, the intermediary determines and awards the appropriate reimbursement. The award is made in the form of a "notice of program reimbursement" (NPR) which is issued to the provider by the intermediary and which sets forth the basis for and amount of the reimbursement award. 42 C.F.R. § 405.1803. If dissatisfied with the NPR award, the provider may appeal to the PRRB, *provided that* three jurisdictional prerequisites are satisfied: (1) the provider has filed a timely cost report, (2) the amount in controversy is $10,000 or more, and (3) the appeal is filed within 180 days of the date of the NPR.[9] 42 U.S.C. § 1395oo(a); 42 C.F.R. part 405, sub. R. By regulation, the PRRB may take jurisdiction of late-filed appeals "for good cause shown." 42 C.F.R. §§ 405.1835 and 405.-1841(b). Following review by the PRRB, the Secretary may then review the decision and reverse, affirm or modify. 42 U.S.C. § 1395oo(f)(1).[10] If a provider is dissatisfied with a final decision of the Board or of the Secretary, it may seek review by filing suit in federal district court. 42 U.S.C. § 1395oo(f)(1).

In the case at bar, plaintiff filed appeals with the PRRB for fiscal years 1980, 1981, and 1982. The appeal was filed January 31, 1984. The NPR's appealed from were mailed:

FY 1980: February 18, 1982

FY 1981: March 29, 1983

The plaintiff's 1980 and 1981 appeals were concededly filed more than 180 days

following the NPR's appealed from, and the PRRB dismissed the appeals on this basis. The PRRB also declined to grant plaintiff a good cause extension as authorized by 42 C.F.R. § 405.1841(b). Plaintiff then filed this suit, seeking to obtain judicial review of the PRRB's decision to dismiss. Defendant's motion to dismiss plaintiff's suit is based on three alternative grounds: (1) the Court lacks subject matter jurisdiction by virtue of the fact that plaintiff's appeal to the PRRB was untimely, consequently, no "final decision" on which federal court jurisdiction may be based was ever entered by the PRRB; (2) the PRRB's decision to deny plaintiff a good faith extension of time to appeal is judicially nonreviewable because it is one committed to agency discretion by law;[11] and (3) should the Court determine that federal jurisdiction does obtain, defendant in the alternative moves for summary judgment in its favor, on the ground that the PRRB's decision to dismiss plaintiff's 1980 and 1981 claims was not arbitrary, capricious, or an abuse of discretion.

**Subject Matter Jurisdiction**

The Medicare Act provides for judicial review of a "final decision" of the PRRB. 42 U.S.C. § 1395oo(f)(1). Virtually every court which has considered the question has held that a PRRB decision to dismiss a provider's appeal on timeliness grounds is not a "final decision" subject to judicial review.[12] *See John Muir Memorial Hospi-*

---

**9.** The 180-day period commences the day the NPR is mailed. 42 U.S.C. § 1395oo(a).

**10.** The Secretary has delegated this authority to the Deputy Administrator of the Health Care Financing Administration. 42 Fed.Reg. 13,262 (1977); 42 Fed.Reg. 57,351 (1977).

**11.** In general, the scope of review of the Secretary's decision regarding a determination of the PRRB is governed by the Administrative Procedure Act, 5 U.S.C. §§ 701–706, under which agency decisions can be set aside if arbitrary, capricious, or an abuse of discretion. *Columbus Community Hospital, Inc. v. Califano*, 614 F.2d 181, 185 (8th Cir.1980); 42 U.S.C. § 1395oo(F)(1). However, this scope of review does not apply to "agency action [which] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2).

**12.** Under PRRB regulations, finality for judicial review is achieved following a written Board decision at the conclusion of a hearing, or following review by the Secretary of a Board decision. 42 C.F.R. §§ 405.1817, .1875. In the absence of a PRRB hearing, plaintiffs have failed to exhaust their administrative remedies, and there is no "final decision" of the PRRB presented to the Court for review. *See St. Joseph's Hospital*, slip op. at 3–4. As stated in *John Muir Memorial Hospital, Inc. v. Califano*, 457 F.Supp. 848, 853 (N.D.Cal.1978): "Section 1395oo(f)(1) permits a provider to seek review in the courts only after the [PRRB] has rendered a 'final decision.' The PRRB can render a final decision only if the provider has requested a hearing before it within 180 days after receiving notice of the fiscal intermediary's final determination."

**616**

tal, Inc. v. Califano, 457 F.Supp. 848 (N.D. Cal.1978); *St. Joseph's Hospital of Kansas City v. Heckler*, No. 84–0385CV–W–8 (W.D. Mo. Sept. 24, 1984); *Levering Hospital and Depaul Community Hospital v. Heckler, et al.*, Medicare & Medicaid Guide (CCH) ¶ 34,483 (E.D.Mo. Mar. 15, 1985); *Western Medical Enterprises, Inc. v. Heckler*, No. 84–0741–RPA (N.D.Cal. Sept. 24, 1984); *University of Chicago Hospitals and Clinics v. Heckler*, 605 F.Supp. 585 (N.D.Ill.1985). The courts have stated that "any grievance respecting the amount of cost reimbursement due a provider must first be submitted for ... administrative processing available under the [Medicare Act]," *Humana of South Carolina, Inc. v. Califano*, 590 F.2d 1070,

1078 (D.C.Cir.1978), and that, accordingly, where the provider has failed to file a timely appeal with the PRRB, there is not a final decision on which to base jurisdiction. *See, e.g., Levering Hospital,* Medicare Guide at 9409.[13]

The fountainhead for this line of caselaw is a 1979 Eighth Circuit decision, *Sheehan v. Secretary of Health, Education and Welfare*, 593 F.2d 323 (8th Cir.1979), construing the disability benefits provisions of the Social Security Act, 42 U.S.C. § 423.[14] Because the Social Security Act and Medicare Act share a high degree of schematic similitude, many courts have stated that cases construing the former are of precedential value in interpreting the latter.[15]

---

**13.** Section 405(h) of the Social Security Act, made applicable to the Medicare Act by 42 U.S.C. §§ 1395ii, provides that section 405(g) is the sole avenue for judicial review of all "claim[s] arising under" the Medicare Act. *Heckler v. Ringo*, 466 U.S. 602, 104 S.Ct. 2013, 2021–22, 80 L.Ed.2d 622 (1984). Section 405(g), however, "was borrowed for limited purposes not here pertinent; the review procedure applicable to provider reimbursement disputes is found in Section 1395oo." *Humana of South Carolina*, 590 F.2d at 1075 (footnotes omitted). Thus, section 1395oo is the sole avenue to judicial review, and jurisdiction under the Administrative Procedure Act has been precluded by the Supreme Court's decision in *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). The Medicare Act specifically precludes judicial review of PRRB decisions under the general federal question statute, 28 U.S.C. § 1331, or the mandamus statute, 28 U.S.C. § 1336. *John Muir*, 457 F.Supp. at 853; *Califano v. Settle*, 708 F.2d 1380, 1384–85 (9th Cir. 1983). Furthermore, while section 405(g) provides an alternative basis of jurisdiction for suits brought under the Social Security Act, *Weinberger v. Salfi*, 422 U.S. 749, 767, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975), the courts are in universal agreement that the alternative judicial review provisions of section 405(g) are not applicable to the Medicare Act, by virtue of the fact that section 1395ii of the Act makes section 405(h) applicable to Medicare claims but does not do the same for section 405(g). *John Muir*, 457 F.Supp. at 854, *citing Association of American Medical Colleges v. Califano*, 569 F.2d 101 (D.C.Cir.1977); *Trustees of Indiana University v. Blue Cross Association*, 445 F.Supp. 617, 618–19 (S.D.Ind.1977).

**14.** *Sheehan,* in turn, is derived from decisions of the United States Supreme Court in *Wein-*

*berger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) and *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). In *Weinberger,* the Supreme Court held that section 405(g) is the exclusive avenue to review the Secretary's decisions, and that a "final decision" of the Secretary is a "jurisdictional prerequisite" to judicial review which "may not be dispensed with merely by a judicial conclusion" that the failure to exhaust was inadvertent or unintentional. *Weinberger,* 422 U.S. at 766, 95 S.Ct. at 2467. In *Califano v. Sanders* the Court determined that an agency decision not to reopen claims for social security benefits is a discretionary exercise not subject to judicial review. The Court explained in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) that the "final decision" jurisdictional requirement of section 405(g) consists of two elements—(1) that the administrative remedies prescribed by the Secretary be exhausted, and (2) that a claim for benefits shall have been presented to the Secretary—and further explained that only the second of these is truly "jurisdictional" in the sense that it cannot be "waived" by the Secretary in a particular case. In the case at bar plaintiff failed to exhaust its administrative remedies and the Secretary obviously has not waived the exhaustion requirement.

**15.** Much like the Medicare Act, the Social Security Act provides for review by an agency body—the "Appeals Council"—of benefits decisions of a first tier agency designated officer—Social Security ALJ's. As with the Medicare Act, review under the Social Security Act lies only if the appeal to the reviewing body is filed on a timely basis—in the case of an appeal from a disability benefits decision of an ALJ, appeal must be filed within 60 days of the date of the decision. As with the Medicare Act, the reviewing body may permit an extension of time to appeal upon a

In *Sheehan*, the Eighth Circuit was asked to review a decision of the Social Security Appeals Council denying to a disability benefits claimant a good cause extension of time to appeal an adverse benefits decision. Finding that a timely appeal was a "jurisdictional prerequisite" to judicial review, the court "reluctantly" determined that it lacked subject matter jurisdiction of the case, on the ground that no "final decision" had been entered by the Appeals Council. *Sheehan*, 593 F.2d at 325–27. In so doing the court relied on the following policy rationale:

> Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefits of its experience and expertise, and to compile a record which is adequate for judicial review.

*Sheehan*, 593 F.2d at 326, *quoting Weinberger v. Salfi*, 422 U.S. 749, 766–67, 95 S.Ct. 2457, 2467–68, 45 L.Ed.2d 522 (1975). *Sheehan* has been widely followed by courts construing the disability benefits provisions of the Social Security Act. *See, e.g., Krumpelman v. Heckler*, 767 F.2d 586 (9th Cir.1985); *Burbage v. Schweiker*, 559 F.Supp. 1371 (N.D.Cal.1983); *Smith v. Heckler*, 761 F.2d 516 (8th Cir.1985); *Jones v. Heckler*, 613 F.Supp. 72 (N.D.Ill.1985). *But see Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir.1983).

Subsequently, some courts have applied the reasoning of *Sheehan* to cases arising under the Medicare Act. *See, e.g., St. Joseph's Hospital*, slip op. at 5; *Levering Hospital*, Medicare Guide at 9409. The

courts have recognized that the policy concerns undergirding *Sheehan* are equally present in a medicare provider reimbursement context, and that to permit judicial review of untimely appeals would frustrate the statutory scheme by permitting providers to bypass the orderly administrative review procedures in favor of judicial review. As stated in *Sheehan*: "If the claimant may obtain review [of an untimely appeal] the Secretary's orderly procedures for processing disability claims mean little or nothing. If claimant may avoid the timely exhaustion of remedies requirement, any claimant could belatedly appeal his claim at any time and always obtain district court review of an ALJ's decision." *Sheehan*, 593 F.2d at 326–27. In the *John Muir* case, in determining that a medical provider's failure to file a timely appeal from a fiscal intermediary's NPR award barred judicial review, the court explained:

> To rule otherwise would be to render a decision that a cost report can never be closed, for it would allow a provider to obtain a substantive review of its cost report merely by filing a request for reopening, or repeated requests for reopening, at any time after the cost report had been filed.

*John Muir*, 457 F.Supp. at 853–54 n. 11.[16] *See also Levering Hospital*, Medicare Guide at 9410 ("the requirement that a request for administrative review be made in a timely manner reflects a rational policy choice on the part of Congress").

The Court's analysis of the relevant statutory scheme convinces it that the above-stated policy concerns are well founded. Permitting judicial review of untimely appeals would effectively sanction at-will provider bypass of the appellate scheme estab-

---

showing of good cause. 20 C.F.R. §§ 404.-946, .954. For cases recognizing that cases arising under the Medicare Act are analogous to cases arising under the Social Security Act, *see Levering Hospital; Pacific Coast Medical Enterprises v. Harris*, 633 F.2d 123, 137 n. 49 (9th Cir.1980); *Humana of South Carolina*, 590 F.2d at 1075. *But see Cleveland Memorial*, 444 F.Supp. at 128.

**16.** In the *St. Joseph's Hospital* case it was stated:

> Those who follow the *Sheehan* rationale argue that if the claimants are allowed to avoid the requirement of a Board hearing, health care providers could belatedly challenge an intermediary's determination at any time and obtain judicial review, and that such a result would evade the time limitations imposed by the statute and frustrate the Congressional scheme of orderly judicial review of administrative determinations.

*St. Joseph's Hospital*, slip op. at 4.

618

lished by Congress. The PRRB is the body designated by Congress to hear appeals from the award decisions of fiscal intermediaries—the Board should be allowed to carry out this function in an orderly, systematic manner. By sleeping on its rights the plaintiff has deprived the Court of the full administrative record necessary to a well-reasoned judicial determination.[17] Because of plaintiff's laxity the Court does not have the benefit of the PRRB's "expertise and experience" on these highly technical factual and legal issues. Nor is it a sufficient answer to categorize the appellate scheme as "labyrynthine," *Beth Israel, Medicare Guide* at 9182. Whether "labyrynthine" or not, the review process reflects the considered judgment of Congress, and will be respected by the courts.

Against this reasoning plaintiff raises two primary arguments.

First, plaintiff points to one case, *Beth Israel Hospital v. Heckler,* Medicare and Medicaid Guide ¶ 34,448 (D.Mass. Dec. 19, 1984), in which judicial review of an untimely medicare provider appeal was granted. In *Beth Israel,* the plaintiff medical provider filed its request for appeal with the PRRB 25 days after the 180-day limitations period had run. The provider sought a good cause extension on the ground that

(1) it was unaware that an appeal was necessary until certain facts came to light post the 180 day period, and (2) it suffered certain internal processing delays due to the unexpected resignation of its "director of reimbursement" shortly before the statutory period expired. The PRRB denied the request for a good cause extension and dismissed the appeal. The provider then brought suit in the United States District Court for the District of Massachusetts. On cross motions for summary judgment the court held that the PRRB's decision was "final" and that federal jurisdiction did obtain, relying primarily on decisions of the D.C. Circuit in *Athens Community Hospital v. Schweiker,* 686 F.2d 989, 994 (D.C. Cir.1982), and the United States District Court for the Eastern District of North Carolina in *Cleveland Memorial Hospital, Inc. v. Califano,* 444 F.Supp. 125 (E.D.N.C. 1978), *aff'd,* 594 F.2d 993 (4th Cir.1979). In those cases it was held that "a decision by the PRRB refusing to exercise jurisdiction is ... a final decision sufficient to permit judicial review." *Athens Community,* 686 F.2d at 994, *citing Cleveland Memorial.* In each of these cases, however, the PRRB's jurisdictional dismissal was based on factors *other than* untimeliness.[18] Where the PRRB's decision to dismiss is

17. For example, the statute provides that PRRB review of a fiscal intermediary's NPR award is to be based upon extensive evidence, including the disputed cost report and "the evidence considered by the intermediary and such other evidence as may be obtained or received by the Board...." 42 U.S.C. § 1395oo(d). Here, because of plaintiff's untimeliness, the Court has been deprived of the Board's expertise in evaluating the cost reports and other complex evidentiary items; and the PRRB was denied the opportunity to exercise its power to make modifications to matters covered in the cost report. 42 C.F.R. § 405.1869.

18. In *Cleveland Memorial* the PRRB's dismissal was based on a finding that the jurisdictional dollar amount requirements of section 1395oo(b) had not been satisfied. In *Athens Community* the PRRB found that it lacked jurisdiction to consider entirely new claims in the context of a request to reopen a cost report. In neither case was the jurisdictional dismissal based on the untimeliness of the provider's appeal.

The rationale for the distinctions drawn in *Athens Community* (distinguishing *Cleveland Memorial* and *John Muir* ) is not difficult to discern. As stated elsewhere, judicial review of actions arising under the Act is available only to the extent the Act provides for such review. *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). Where an appeal is timely filed, the "threshold requirements" of section 1395oo(f)(1) have been met and jurisdiction obtains. Absent compliance with the jurisdictional prerequisites, the sole basis of jurisdiction dissipates, and the Court is left without a jurisdictional foundation. *Athens Community,* 686 F.2d at 994. As recognized by the Eighth Circuit in *Smith v. Heckler,* a "dismissal (based on untimeliness) is binding and not subject to further review. Such action does not address the merits of the claim, and thus cannot be considered appealable...." *Smith v. Heckler,* 761 F.2d at 518 (citations omitted).

based on timeliness grounds solely, these cases are simply inapposite, as the *Athens Community* panel expressly recognized. In *Athens Community* the court identified the issue as "whether a decision by the PRRB not to exercise jurisdiction is a 'final decision' sufficient to establish jurisdiction." *Athens Community,* 686 F.2d at 993. The court then identified two reported cases in which the issue had been raised—*Cleveland Memorial,* holding that a PRRB jurisdictional dismissal is a reviewable final decision, and *John Muir Memorial Hospital, Inc. v. Califano,* 457 F.Supp. 848 (N.D.Cal.1978), holding that it is not. The *Athens Community* panel determined to follow the reasoning of *Cleveland Memorial,* but only after first taking pains to distinguish *John Muir,* stating:

> *John Muir,* however, is easily distinguished from *Cleveland Memorial* and this case because 42 U.S.C. § 1395oo(f)(1) jurisdiction was not available to the court.[4]

The court went on to state in footnote 4:

> This bases of jurisdiction [1395oo(f)(1)] was not available to the court in *John Muir* because the provider failed to timely file its appeal. Under the statute, a decision by the PRRB not to hear a case on this basis is, by definition, not a "final decision."

*Athens Community,* 686 F.2d at 994 n. 4, citing *John Muir,* 457 F.Supp. at 853. Thus, as the *Athens Community* panel expressly recognized, a PRRB dismissal on timeliness grounds is not a "final decision" subject to judicial review, although a dismissal on some other jurisdictional ground may be. The *Beth Israel* court's reliance on *Athens Community* and *Cleveland Memorial* was thus misplaced. The case at bar more closely resembles *John Muir* —PRRB dismissal on grounds of untimeliness—than either *Athens Community* or

*Cleveland Memorial*—PRRB dismissal on a jurisdictional ground other than timeliness. The *John Muir* decision is thus the relevant precedent, and *Beth Israel* and the cases on which it is based are inapposite.

Plaintiff's final argument is an equitable one, based on its contention that should judicial review be denied in cases such as the one at bar, then the PRRB will have unrestrained power to dismiss appeals on timeliness grounds with impunity and without the necessary check of judicial review. This is, as a general proposition, undoubtedly true. As stated in the *St. Joseph's Hospital,* case, denying judicial review of an untimely appeal:

> [S]uch a result not only appears to be harsh, it is harsh. It offers no judicial control over administrative decisions such as the one here that plaintiff failed to demonstrate good cause for the delayed filing....

*St. Joseph's Hospital,* at 614. The "harshness" of the result aside, it is clear that judicial abstinence in such a case is the only alternative to interminable litigation of "closed" medicare provider appeals.[19] The threat that long-dormant claims might at any time spring back to life would render administrative management of the medicare program extremely difficult— without any time limits on liability the medicare administrators would presumably be forced to set aside ever larger amounts to meet the threatened contingency, amounts which might more usefully be expended in aid of the elderly and infirm. Having slept on its rights, the plaintiff is in no position to now raise equitable arguments in favor of reviving its long-neglected claims.

In sum, in light of the foregoing, the Court finds that the PRRB's decision to dismiss plaintiff's 1980 and 1981 appeals

---

**19.** As stated in *Sheehan:*

Precluding judicial review in a meritorious claim may appear to be a harsh result. Yet the necessity to maintain orderly review requires compliance with orderly procedures. In the absence of such compliance, the Secretary's regulations provide for discretionary review if a claimant can demonstrate good cause to reopen a claim or to extend time for appeal. These are the only alternatives available to a claimant under the circumstances presented.

*Sheehan,* 593 F.2d at 327 (footnote omitted).

was not a "final decision" and thus is not subject to judicial review.[20]

Because the Court finds that it lacks subject matter jurisdiction, it is unnecessary to reach the remaining arguments raised by the defendant. The Court notes, however, that at least two courts have determined that the PRRB's denial of a good cause extension is a "discretionary" exercise not subject to judicial review, *see Western Medical*, at 614; *Chicago Hospitals*, 605 F.Supp. at 587,[21] and that in *Chicago Hospitals*, it was stated "we find no abuse of discretion and find it difficult to imagine what would constitute abuse of discretion other than an adamant rejection of the provisions of the Board's own regulation 405.1841(b)." *Chicago Hospitals*, 605 F.Supp. at 587.[22]

Based on the foregoing, the arguments of counsel, and upon review of all the files, records, and proceedings in this matter,

IT IS ORDERED that defendant's motion to dismiss is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

20. In 1980 the Secretary proposed a new regulation which would modify 42 C.F.R. § 405.1873 by adding the following language.

(b) A decision of the Board that it lacks jurisdiction to consider a matter shall be treated as a final decision of the Board. The Board shall issue written notice of such a decision to the parties in accordance with § 405.1871. Such a decision may be reviewed by the Administrator under § 405.1875, and by the courts (see § 405.1877).

45 Fed.Reg. 9953, 9959 (1980). The amendment was not adopted, perhaps due to doubts about the Secretary's power to create subject matter jurisdiction for the courts. *See Athens Community*, 686 F.2d at 994 n. 5.

21. In *Jaymar-Ruby, Inc. v. FTC*, 651 F.2d 506 (7th Cir.1981), it was held that decisions committed to agency discretion are not reviewable pursuant to the Administrative Procedure Act unless specifically provided by statute, and in *Ness Investment Corp. v. United States Department of Agriculture*, 512 F.2d 706, 714 (9th Cir. 1975), it was declared that judicial review of agency discretion is limited to violations of constitutional, statutory, regulatory, or other legal mandates or restrictions.

22. The Court further notes that in *Beth Israel*, after determining that the PRRB's dismissal on timeliness grounds was a reviewable final decision, the Court went on to grant the Secretary's motion for summary judgment, finding that the Board's decision to dismiss was not "arbitrary, capricious or an abuse of discretion."