LENOX HILL HOSPITAL and Kaleida Health d/b/a/ Buffalo General Hospital, Plaintiffs,

v.

Donna E. SHALALA, Secretary of Health and Human Services, Defendant.

Civil Action No. 99–CV03087SSH.

United States District Court, District of Columbia.

Nov. 14, 2000.

David Howard Eisenstat, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Washington, DC, for plaintiffs.

Victoria M. Corke, U.S. Department of Justice, Washington, DC, Stuart Alexander Licht, U.S. Department of Justice, Civil Division, Washington, DC, for defendant.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are defendant's motion to dismiss, plaintiffs' opposition, and defendant's reply thereto. Upon consideration of the parties' submissions, the Court grants defendant's motion. Although findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56, see Fed.R.Civ.P. 52(a); *Summers v. Department of Justice*, 140 F.3d 1077, 1079–80 (D.C.Cir.1998), the Court sets forth its reasoning.

## BACKGROUND

Plaintiffs Lenox Hill Hospital ("Lenox Hill") and Kaleida Health d/b/a Buffalo General Hospital ("Buffalo General") provide hospital services to beneficiaries under the Medicare program. On November 19, 1999, plaintiffs filed a complaint in this case, and indicated that this case is related to *County of Los Angeles v. Shalala*, 992 F.Supp. 26 (D.D.C.1998), *rev'd,* 192 F.3d 1005 (D.C.Cir.1999), *cert. denied,* — U.S. ——, 120 S.Ct. 2197, 147 L.Ed.2d 233

(2000), and the cases with which *County of Los Angeles* is consolidated.[1] As in those cases, plaintiffs challenge the methodology used by the Secretary of Health and Human Services (the "Secretary") in calculating certain "outlier payments" made to Medicare providers of hospital services. Under the Medicare Act, Title XVIII of the Social Security Act, *as amended*, 42 U.S.C. § 1395 *et seq.*, the Secretary reimburses qualifying hospitals for the costs of covered services provided to eligible beneficiaries. Since 1983, hospitals have been reimbursed for inpatient services under the Prospective Payment System ("PPS"), which provides reimbursements on the basis of prospectively fixed rates determined according to diagnosis related groups ("DRGs"). *See* 42 U.S.C. § 1395ww(d)(1) (1994 & Supp. IV 1998). Recognizing that, in certain cases, Medicare patients require extraordinarily lengthy or costly hospitalizations, Congress sought to mitigate the financial burden imposed on hospitals treating such patients by directing that they receive supplemental payments—so called "outlier payments"—that "approximate the marginal cost of care beyond" certain thresholds. 42 U.S.C. § 1395ww(d)(5)(A)(iii) (1994). In this case, plaintiffs challenge the Secretary's determination of outlier payments for fiscal year ("FY") 1986 on the grounds, *inter alia*, that (1) 42 U.S.C. § 1395ww(d)(5)(A)(iv) mandates that the total amount of outlier payments for each FY equal between 5% and 6% of the total estimated or projected PPS payments for each FY, but the actual

amount for FY 1986 fell below the 5% mark; and (2) the Secretary acted arbitrarily and capriciously in setting the outlier thresholds for FY 1986 by ignoring relevant factors and data, and failing to demonstrate a rational connection between the factors and data considered and the thresholds adopted.[2] *See* Compl. ¶ 31.

Before filing their complaint, plaintiffs attempted to pursue their claims administratively. In order to receive payment for Medicare services, a provider must file an annual cost report with a "fiscal intermediary," which then analyzes the report, determines the total amount of reimbursement, and sets forth this amount in a notice of program reimbursement ("NPR"). *See* 42 C.F.R. §§ 405.1803, 413.20, 413.24, and 413.60 (1998). If a provider is dissatisfied with the final determination of reimbursement, it may obtain a hearing before the Provider Reimbursement Review Board (the "PRRB" or the "Board") where the amount in controversy is $10,000 ($50,000 if a group appeal) or more, and where the provider files a request for a hearing within 180 days after notice of the intermediary's final determination. *See* 42 U.S.C §§ 1395oo(a), (b) (1994). Although the Medicare Act does not provide an exception to the 180–day filing deadline, the Secretary's regulations allow the Board to extend the deadline to up to three years "for good cause shown." 42 C.F.R. § 405.1841(b). If the jurisdictional prerequisites are satisfied, and the Board has authority to decide the issue in

---

1. Because the statutory background to plaintiffs' claims is discussed thoroughly in the *County of Los Angeles* opinions, the Court provides only a brief summary here.

2. These claims are virtually identical to those advanced by the plaintiffs in the *County of Los Angeles* litigation. After the parties in *County of Los Angeles* appealed the Court's ruling on their cross-motions for summary judgment, the Court of Appeals held that (1) the Secretary's interpretation of the Medicare statute as not requiring retroactive adjustments to outlier payments where the total amount of payments falls short of the 5% mark was reasonable, and (2) the Secretary provided an

inadequate explanation for her decision not to use 1984 data in setting the outlier thresholds for FYs 1985 and 1986. *County of Los Angeles*, 192 F.3d at 1012–23. Consistent with the Court of Appeals' decision, this Court subsequently entered judgment in favor of the Secretary on the first claim, and remanded the second claim to the Secretary either to recalculate outlier thresholds for FYs 1985 and 1986, or to provide a reasonable explanation for refusing to use the 1984 data in setting outlier thresholds for those FYs. *See County of Los Angeles v. Shalala*, Civil Action No. 93–146, Order Dated Aug. 3, 2000.

controversy, *see id.* § 405.1867, it may hold a hearing and issue a decision, which is then reviewable by the Administrator of the Health Care Financing Administration (the "Administrator"). *See* 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 405.1801(a), 405.1875(a)(1). If the jurisdictional prerequisites are met, but the Board determines—"on its own motion or at the request of a provider of services"—that it does not have authority to resolve the issue in controversy, the provider may seek judicial review by filing a civil action within 60 days after receiving notice of the Board's determination. 42 U.S.C. § 1395oo(f)(1); *see also* 42 C.F.R. § 405.1842. In such cases of expédited judicial review ("EJR"), a determination by the Board that it lacks authority to resolve an issue is a final decision, but the jurisdictional component of the Board's decision is reviewable by the Administrator. *See* 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 405.1875(a)(1), (c)(4).

In this case, both plaintiffs filed their request for a Board hearing over 180 days after, but within three years of, the dates of their respective NPRs for FY 1986. *See* Administrative Record ("A.R.") 9–10, 95–98. On September 3, 1997, plaintiffs requested that the Board certify their cases for EJR, asserting that they were challenging the Secretary's methodology in calculating outlier payments, and that the Board lacked authority pursuant to 42 C.F.R. § 405.1867 to set aside the challenged portions of that methodology. *See* A.R. 234–36. Plaintiffs subsequently requested that the Board find good cause for' their late appeal filings pursuant to 42 C.F.R. § 405.1841(b). *See* A.R. 95–98. On November 2, 1999, the Board found good cause for plaintiffs' late filings on the ground that plaintiffs could not have known about the underpayment of outlier payments for FY 1986, as "the outlier pay-

ment rates for 1986 were not clearly specified in the Federal Register ..., [and] the first statistic that the funds were underpaid for 1986" was not published in the Federal Register until June 1992. A.R. 77–78. The Board also granted plaintiffs' request for EJR. *See* A.R. 79. On the basis of the Board's decision, plaintiffs filed their complaint in this case on November 19, 1999. On November 30, 1999, however, plaintiffs were notified that the Administrator, on her own motion, intended to review the jurisdictional portion of the Board's decision, *i.e.,* its finding of good cause. *See* A.R. 75–76. On January 3, 2000, the Administrator reversed the Board's finding of good cause, reasoning, *inter alia,* that because plaintiffs were challenging the Secretary's policy of not making retroactive adjustments to outlier payments, publication in the Federal Register of actual underpayments was not required for plaintiffs to appeal their NPRs, and that the Secretary provided sufficient and timely notice of her methodology, the thresholds and data used for FY 1986, and the likelihood that the total actual payments for FY 1986 would fall below the 5% level. *See* A.R. 1–15.

The Secretary now moves to dismiss plaintiffs' complaint or, in the alternative, for judgment on the pleadings on the ground that the Court lacks jurisdiction to review the Administrator's reversal of the Board's decision.[3] Alternatively, the Secretary contends that the Administrator's decision was not arbitrary and capricious.

## STANDARD OF REVIEW

 Federal Rule of Civil Procedure 12(b) states that a motion making any of the defenses enumerated therein "shall be made before pleading if a further pleading is permitted." Because the Secretary has already filed an answer, her Rule 12(b)

---

**3.** The Secretary does not contend that plaintiffs' complaint must be dismissed because they appealed from the Board's decision and did not "appeal directly from the Administrator's decision within the 60 days provided by

42 U.S.C. § 1395oo(f)(1)." Def.'s Mot. at 14 n.10; *see also id.* at 2 n. 1 ("The Secretary did not and does not insist upon plaintiffs filing a new or amended Complaint in this case.").

motion to dismiss is untimely. The Court, therefore, will treat her motion as a motion for judgment on the pleadings under Rule 12(c). In resolving a Rule 12(c) motion, a court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Peters v. National R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C.Cir.1992) (internal quotation marks and citation omitted). "A court will grant a motion for judgment on the pleadings only if, after the close of the pleadings, no material fact remains in dispute, and the moving party is entitled to judgment as a matter of law." *Transworld Prods. Co. v. Canteen Corp.*, 908 F.Supp. 1 (D.D.C.1995) (citing *Peters*, 966 F.2d at 1485).[4]

## DISCUSSION

■ Plaintiffs' complaint invokes this Court's jurisdiction under the Medicare Act, 42 U.S.C. § 1395oo(f)(1), the federal question statute, 28 U.S.C. § 1331, and the Mandamus Act, 28 U.S.C. § 1361. Compl. ¶ 6. The Court, however, finds that it may exercise jurisdiction over plaintiffs' claims only to the extent permitted by the Medicare Act. Section 1331 does not provide an appropriate jurisdictional basis because § 405(h) of the Social Security Act, made applicable to the Medicare Act by 42 U.S.C. § 1395ii, states that "[n]o action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 . . . of Title 28

to recover on any claim arising under this subchapter." *See also Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 120 S.Ct. 1084, 1093, 1098, 146 L.Ed.2d 1 (2000) (holding that § 405(h) "demands the 'channeling' of virtually all legal attacks through the agency"; exception only where, "as applied generally to those covered by a particular statutory provision, hardship likely found in many cases turns what appears to be simply a channeling requirement into complete preclusion of judicial review."). Nor may the Court exercise jurisdiction under the Mandamus Act because the Supreme Court has held that mandamus relief is not appropriate where a party has an available administrative remedy under the Medicare program. *Heckler v. Ringer*, 466 U.S. 602, 616–17, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984); *accord Ganem v. Heckler*, 746 F.2d 844, 850 (D.C.Cir.1984). Plaintiffs appear to concede that the Medicare Act provides the only possible basis for the Court's jurisdiction, as they do not contest this point in their opposition.

■ Plaintiffs sought to avail themselves of the Court's jurisdiction under the Medicare Act by seeking EJR pursuant to 42 U.S.C. § 1395oo(f)(1). As discussed, because plaintiffs did not file their appeals to the Board within 180 days after notice of their NPRs for FY 1986, they requested a good-cause extension of the filing deadline from the Board, which subsequently granted the extension and also granted

---

**4.** Although the Court will consider matters outside the pleadings—to wit, the administrative record—in determining whether it has subject matter jurisdiction over this action, it will not convert the Secretary's motion into one for summary judgment, as contemplated by the language of Rule 12(c). "A defendant may use a rule 12(c) motion after the close of the pleadings to raise various rule 12(b) defenses regarding procedural defects, in which case courts apply the same standard applicable to the corresponding 12(b) motion." *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir.1993). On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court may properly go beyond the pleadings and consider facts evidenced in the record

without converting the motion into one for summary judgment. *See Herbert v. National Academy of Sciences*, 974 F.2d 192, 197 (D.C.Cir.1992); *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981). Accordingly, the Court's consideration of the administrative record does not trigger Rule 12(c)'s conversion requirement. *See also Dolan v. Association of Flight Attendants*, 1996 WL 131729, *2 (N.D.Ill. Mar.20, 1996) ("Where, however, a motion for judgment on the pleadings is used as an auxiliary device to challenge subject matter jurisdiction, a trial court may consider evidence by affidavit, deposition or live testimony without converting the proceeding to one for summary judgment." (internal quotation marks and citation omitted)).

plaintiffs' request for EJR. Nevertheless, the Administrator reversed the Board's good-cause finding, thereby removing any jurisdictional basis for plaintiffs to seek EJR. Whether the Administrator properly reversed the Board's decision, therefore, dictates whether the Court has jurisdiction to consider plaintiffs' claims in this lawsuit.

The Secretary, however, argues that the Court lacks jurisdiction even to review the Administrator's reversal. In civil actions brought pursuant to 42 U.S.C. § 139oo(f)(1), a court must apply the standards in the Administrative Procedure Act (the "APA"), 5 U.S.C. § 701 *et seq. See* 42 U.S.C. § 1395oo(f)(1) ("Such action ... shall be tried pursuant to the applicable provisions under chapter 7 of title 5 notwithstanding any other provisions in section 405 of this title."). As relevant here, the APA provides for judicial review of final agency action unless the agency action is committed to agency discretion by law. *See* 5 U.S.C. §§ 701(a)(2), 704. The Secretary argues that the Administrator's decision did not constitute final agency action and, in the alternative, was committed to agency discretion by law.

 The Court finds that it lacks jurisdiction to review the Administrator's decision because, assuming *arguendo* that decision constitutes a final decision, whether the 180–day deadline should be extended for good cause is a decision committed to agency discretion by law.[5] In determining whether agency action has been committed to agency discretion by law under 5 U.S.C. § 701(a)(2), a court must ascertain "whether the applicable statutes and regulations are 'drawn so that a court would have [a] meaningful standard against which to judge the agency's exercise of discretion.'" *CC Distributors, Inc. v. United States*, 883 F.2d 146, 153 (D.C.Cir. 1989) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) (alteration in original)); *accord National Fed'n of Fed. Employees v. United States*, 905 F.2d 400, 405 (D.C.Cir.1990). A decision is committed to agency discretion "if no judicially manageable standards are available for judging how and when an agency should exercise its discretion." *Claybrook v. Slater*, 111 F.3d 904, 908 (D.C.Cir.1997) (quoting *Heckler*, 470 U.S. at 830, 105 S.Ct. 1649). As noted, the Medicare Act does not provide an exception to the 180–day filing deadline for appealing NPRs to the Board; rather, this exception has been created by regulation. 42 C.F.R. § 405.1841(b) states:

> A request for a Board hearing filed after the [180–day] time limit prescribed in paragraph (a) of this section shall be dismissed by the Board, except that for good cause shown, the time limit may be extended. However, no such extension shall be granted by the Board if such request is filed more than 3 years after

---

**5.** Although the Court does not decide whether a denial of a good-cause extension by the Board or, in this case, the Administrator, constitutes a final decision by the agency, it notes that a majority of courts addressing the issue have concluded that it does not. *See Monmouth Med. Ctr. v. Shalala*, Civil Action No. 98–1228, slip op. at 14 (D.D.C. Jan. 19, 2000) (attached as Ex. A to Def.'s Mot.); *South Miami Hosp. v. Bowen*, 658 F.Supp. 544, 546–47 (S.D.Fla.1987); *Miami General Hosp. v. Bowen*, 652 F.Supp. 812, 814 (S.D.Fla.1986); *Cambridge Hosp. Ass'n v. Bowen*, 629 F.Supp. 612, 615–20 (D.Minn.1986); *cf. Your Home Visiting Nurse Services, Inc. v. Shalala*, 525 U.S. 449, 452–56, 119 S.Ct. 930, 142 L.Ed.2d 919 (1999) (holding that refusal by fiscal intermediary to reopen a reimbursement determination pursuant to 42 C.F.R. § 405.1885 is not a final reviewable decision). *But see Western Med. Enters. v. Heckler*, 783 F.2d 1376, 1380 (9th Cir.1986) (finding that denial of good-cause extension constitutes a reviewable final decision); *Ozark Mountain Reg'l Rehabilitation Ctr. v. Department of Health & Human Servs.*, 798 F.Supp. 16, 20 (D.D.C. 1992) (same). While not squarely addressing the issue, the Court of Appeals for this Circuit has stated that "[u]nder [42 U.S.C. § 1395oo(f)(1)], a decision by the PRRB not to hear a case on th[e] basis [of an untimely appeal] is, by definition, 'not a final decision.'" *Athens Community Hosp. v. Schweiker*, 686 F.2d 989, 994 n. 4 (D.C.Cir.1982), *modified on reh'g*, 743 F.2d 1 (D.C.Cir.1984).

the date the notice of the intermediary's determination is mailed to the provider.[6] This regulation does not supply any "judicially manageable standards" for evaluating a denial of an extension because the Board's authority to grant an extension is drawn in strictly permissive terms: if the Board finds good case, it "may"—not "shall"—grant an extension.[7] Thus, even if the "good cause" inquiry encapsulates a judicially manageable standard, as one court has found, see Western Med. Enters. v. Heckler, 783 F.2d 1376, 1381 (9th Cir. 1986), the actual decision to extend the filing deadline does not because, once the Board makes a preliminary good-cause determination, § 405.1841(b) neither requires the Board to extend the deadline nor provides any standard by which to guide, let alone constrain, the Board's exercise of its discretion.[8] Indeed, "[t]he Board need not even provide reasons for its decisions." Monmouth Med. Ctr. v. Shalala, Civil Action No. 98–1228, slip op. at 14 (D.D.C. Jan. 19, 2000) (attached as Ex. A to Def.'s Mot.). Given the absence of any relevant "judicially manageable standard," the Court agrees with those cases holding that whether the 180–day filing deadline should be extended for good cause pursuant to § 405.1841(b) is a decision committed to agency discretion by law. See Monmouth Med. Ctr., Civil Action No. 98–1228, slip op. at 14–15; University of Chicago Hospitals & Clinics v. Heckler, 605 F.Supp. 585, 586–87 (N.D.Ill.1985); Levering Hosp.

v. Heckler, 1984 WL 60286, *4 (E.D.Mo. Dec. 31, 1984).

Because the Court concludes that it lacks jurisdiction to review the Administrator's decision reversing the Board's grant of an extension for good cause, it need not evaluate whether that decision was arbitrary and capricious. Absent an extension of the deadline for appealing their NPRs for FY 1986 to the Board, plaintiffs may not invoke the Court's jurisdiction pursuant to 42 U.S.C. § 1395oo(f)(1). For the foregoing reasons, the Court grants defendant's motion to dismiss. An appropriate Judgment accompanies this Opinion.

---

6. There is a circuit split on the lawfulness of the Secretary's good-cause regulation. Compare Western Med. Enters., 783 F.2d at 1379–80 (upholding regulation), with St Joseph's Hosp. v. Heckler, 786 F.2d 848, 852–53 (8th Cir.1986) (holding that Secretary exceeded authority in promulgating regulation), and Alacare Home Health Servs., Inc. v. Sullivan, 891 F.2d 850, 855–56 (11th Cir.1990) (same).

7. For ease of expression, and to be consistent with § 405.1841(b)'s terminology, the Court refers to the Board's denial of a good-cause extension even though it was the Administrator who denied the extension in this case. Reference to the Board as opposed to the Administrator in this context bears no material significance because the Administrator may

review the Board's jurisdictional determinations within 60 days of the Board's decision; the Board's decision becomes controlling only if the Administrator does not reverse, affirm, or modify that decision. See 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 405.1875(a)(1), 405.1877(a).

8. On the basis of its determination that the "good cause" standard is judicially manageable, the Ninth Circuit in Western Med. Enters, concluded that the decision to grant an extension is not committed to agency discretion by law. 783 F.2d at 1381. The court did not address the non-obligatory nature of the Board's authority to grant an extension upon a finding of good cause.